## J. H. SANDFORD v. HESTONVILLE ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 10, 1890—Decided October 6, 1890.

1. It is not of itself negligence, either on the part of the passenger or on the part of a street-railway company, that an adult, or a person reasonably competent to take care of himself, should occupy by permission a

platform of a crowded passenger car: West Phila. etc. Ry. Co. v. Gallagher, 108 Pa. 524.

2. The carrier, however, is bound to higher care and vigilance, when the platform is crowded, in proportion as that place is more dangerous than a seat inside the car; and, in case of injury, this fact, with all the circumstances, will be considered in determining the carrier's responsibility: Crissey v. Railway Co., 75 Pa. 83.

3. In the case of a passenger, obviously incompetent, from extreme youth or other cause, to exercise proper judgment or discretion for his own safety, it is the conductor's duty to exercise the highest degree of vigilance for the passenger's safety consistent with the discharge of his ordinary duties: Pittsb. etc. Ry. Co. v. Caldwell, 74 Pa. 421; Phila. etc. Ry. Co. v. Hassard, 75 Pa. 367.

4. Where a boy of eight years, without the knowledge of the conductor, pushed through a crowded car to the front platform, where he was found by the conductor, when taking up fares, and was immediately thereafter injured without fault on the part of the company's employees, it was error to submit the question of defendant company's negligence to the jury.

5. Although a plaintiff in a cause may not be absolutely concluded by his own testimony as a witness, yet, when he has testified in a circumstantial manner as to a fact peculiarly within his knowledge, and which, if believed, would prevent his recovery, his testimony should not be ignored on the ground that he may have been mistaken.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 440 January Term 1889, Sup. Ct.; court below, No. 524 December Term 1887, C. P. No. 4.

To the number and term of the court below, John H. Sandford, a minor, by his next friend and father, John Sandford, brought trespass against the Hestonville, Mantua and Fairmount Passenger Railroad Company, filing a statement of claim averring that on October 23, 1887, the plaintiff, about eight years of age, "was a passenger on a car of defendant company; that said car was running along Lancaster Avenue, near Forty-first street; that the defendant, through its agent, the conductor, carelessly and negligently placed and permitted him to remain in a dangerous position upon the front platform and step of the car; that defendants illegally and improperly demanded fare, although it had been paid, and in so rough, abusive and harsh and improper manner, that plaintiff became frightened and was put in fear of bodily injury; that by reason of

the dangerous position in which he was placed, plaintiff fell
and was thrown off from the car and underneath the wheels;
that his arm was injured and crushed, and in consequence was
amputated." Issue.

At the trial on February 15, 1889, it was made to appear that
on the date named in the statement, the plaintiff and a compan-
ion named McCoy got into a one-horse car operated by defend-
ant company on Lancaster Avenue. They paid their fares to
the driver of this car, there being no conductor, and rode with
him to the defendant's station at Forty-third street, where they
were told to get upon the two-horse car of the same company,
to continue towards their homes at Thirty-seventh and Wallace
streets. The driver of the one-horse car was asked for trans-
fers, but did not give them. They boarded the defendant's two-
horse car, but whether they got upon it at the rear platform or
at the front platform, the testimony, at least as to young Sand-
ford, was conflicting. There was testimony upon the part of
the defendant that the plaintiff got upon the rear platform and
went inside the car. Witnesses called on the part of the plaint-
iff testified that the boys got on at the front platform. The
plaintiff himself, however, testified that he entered by way of
the rear platform, and was ordered by the conductor to go up
front; that the car was crowded and, going to the front, he
went out upon the front platform. After the car had started
from the station, the conductor went through the car collecting
fares and found the plaintiff and McCoy on the front platform.
In the presence and hearing of the plaintiff the conductor asked
a fare from McCoy, who said they had paid their fares on the
other car. The conductor said that that was an " old guy; he
was trying to steal a ride," and must pay or get off. The plaint-
iff, as was claimed, was frightened, and passed upon the steps
of the platform, as though to get off backward, holding by the
railing. The driver pulled or pushed him back upon the plat-
form. The plaintiff a second time attempted to get off when
he either fell off or jumped, and was thrown under the car and
injured.

At the close of the testimony, the court, WILLSON, J., charged
the jury:

Ordinarily, what ought to be expected of a boy of eight years

of age? [Judging from what you have seen of him, what ought to have been expected of this boy at that time; and judging from his appearance, his size and his intelligence, as you have observed those characteristics, what ought to have been the judgment of the persons in charge of the car, with reference to the boy's capacity to take care of himself?][1] This inquiry is pertinent, because the duty of a defendant like this railway corporation, which, for the practical purposes of the case, is nothing more than the duty of the persons in charge of the car, varies according to circumstances.

The duty of a conductor or driver of a car toward a young child, a very young child, one obviously incapable of directing its own movements with safety, or of exercising that discretion for its own preservation which a person of more mature years would exercise,—I say the duty of the persons in care of the car toward such a person is much more strict, imperative and serious than it is with reference to a person fully and undoubtedly able to take care of himself, or herself, while on a car. [It has been held by our Supreme Court, the highest court in our state, with respect to a child of tender years which was allowed to be upon a car, that it is of itself evidence of negligence on the part of the railway company, when the child is permitted to remain, without special provision for its safety, upon the front platform of a car. It has been held that, in such cases, in some instances of extreme youth, the conductor or person in charge of the car, in order to absolve himself or to acquit the company which he represents of negligence, is bound to use proper force, if necessary, to put the child inside the car, or else to stop the car and put the child off.][2] It is for you to say, that is one of the questions you must consider here, whether or not this boy, at the time of the accident, was so young, so inexperienced and so incapable of taking care of himself, that it was obviously the duty of the conductor or the driver, but primarily of the conductor of the car upon which the boy was riding after having paid his fare, or to a certain extent by permission, either to put the boy inside the car by the exercise of proper force or authority, or, if he would not obey, to stop the car and put the boy off, for his own protection.

[If you shall be of the opinion that this child was so infantile, so young, so incapable of taking care of himself that the con-

Charge of Court below.

ductor in charge of that car must have known that he required that degree of supervision to which I have referred; that he should have been put inside the car or else put off the car in a proper way; and that this accident resulted in consequence of the boy having been allowed to be upon the front platform, in that case the plaintiff is entitled to a verdict, whether the boy jumped off or fell off, for the reason alleged by the plaintiff.] [3]

You will remember that there is a contradiction of testimony upon the point as to what was done with the boy when he came into the car. . . . .

If the boys were put inside of the car, as I have said, the conductor, up to that time, would have discharged his duty. It is for you to say whether his duty was discharged after that, in case, I say, you should be of the opinion that the boys were at first placed inside. Of course, it was not the duty of the conductor, where he had done what the conductor has said he did, viz., put the boys inside the car, to then stand by and watch them. That was not his duty; and, if the case here is one in which a boy who, after having been properly put by a conductor within the car, of his own motion went out on the front platform and jumped off or fell off, there could be in that case no propriety in holding the railroad company responsible for the result of his injury. That would be one of those heedless, reckless things for which the boy would have to answer himself, and for which nobody could be held responsible.

But it is said, on the part of the plaintiff here, that, instead of that being the case, the boys were left upon the platform; that the conductor did not put them inside; that, subsequently when he came and asked them for their fare and they said they had paid it, he made some remark, according to their testimony, about their attempting to steal rides, or said something to that effect, and told them that they must get off if they would not pay their fare. . . . .

If this boy was so young, so infantile as to need the special protection of being placed inside this car, the feature to which I now advert would, perhaps, have very little to do with the main question of responsibility on the part of the railroad company. But if he was not so young as to require that special protection, but was old enough to take a general care of himself,—old enough, I will say, for the conductor to allow him

Charge of Court below.

properly to remain upon the front platform,—it will have a bear-
ing upon the case for you to determine just what it was that
took place between the conductor and the boy.

The conductor says that he asked them for their fare, and
that they replied that they had been upon the transfer car; that
then he said, "Have you your pass?" and one of the boys an-
swered, "No," and that then he said something to them about
it being their duty to pay their fare. The conductor and driver
both say that he, the conductor, demanded a pass. The other
witnesses, Mr. and Mrs. Doris and the larger of the two boys,
James (I have forgotten his last name), say that nothing was
said about a pass. . . . .

But supposing that in all that he did, thus far, the conductor
was only doing that which he had a right to do; and supposing
that he had intended, because the evidence of the payment of
the fares was not presented, to require that these boys should
get off the car, it was not proper for him to tell them to get
off if he wanted them to do so, unless he gave them an oppor-
tunity to do so without incurring danger to themselves. This
would be equally true as to this boy, if he was of an age beyond
the infantile period of which I have spoken, able to take care
of himself and possessed of ordinary discretion. [If what was
said by the conductor, in its language, character and effect, was
such as indicated to that boy, young as he was, that he was to
get off; and if, under an impulse such as was natural for a boy
of his age, he stepped off or got off the car, in obedience to the
direction thus given him, no opportunity being afforded him
by the stoppage of the car to get off in safety, then it would
be for you to say, if you shall believe that he jumped off the
car, whether or not the boy was doing that which, in view of
the circumstances, his age and his inexperience, constituted on
his part contributory negligence.] [4] If, in that, he was doing
only that which was natural for him to do, and that which
would be expected from a boy of his age, that which he did
would not relieve the company from responsibility for the re-
sults of the act of the conductor. . . . .

There is evidence, from both sides of the case, as to the effort
which the driver made to prevent any injury to the boy, which,
to my mind, would be quite satisfactory upon that point. If
the boy had discretion to conduct himself safely, even if he

Charge of Court below.

were told by the conductor, in a threatening way, to get off, and if, with that, there was something more, and the driver, as the boy stepped down, attempted once or twice to push him back, then I would say that you would regard that as quite important evidence in the way of exhibiting a want of due care on the part of the boy.  I am speaking now upon the assumption that you shall be of the opinion that the boy was able to take care of himself.  If he was able to take care of himself, that showing would go very far in warranting the opinion that the boy was guilty of contributory negligence, and therefore was in a position in which he could not recover.

I have now said all that I desire to say to you upon the general features of the case.  If you shall be of the opinion, from the evidence, that there is no satisfactory proof that the railway company was negligent; in other words, if it is your candid conviction that it does not appear here that the persons in charge of the car were negligent, then you will have nothing to do, under your oaths, but to render a verdict for the defendant.  If, on the other hand, you think it has appeared satisfactorily to you that there was negligence on the part of some person in charge of the car, that is, that there was a failure to do something which ought to have been done in regard to this boy, or that something was done which ought not to have been done toward him, and that there was no negligence on the part of the plaintiff, in view of all the circumstances of the case, then you would be obliged to render a verdict for the plaintiff, and in that event another question would arise, as to which I will say a few words, and that is:  What should be the damages that should be awarded? . . . . .

I have been requested by the counsel for the defendant to instruct you upon the following points:

1. If the plaintiff, after the conductor came to the door, stepped down upon the lower step and was at once seized by the driver and placed back on the platform back of the driver, and if he at once stepped down again and was again placed on the platform back of the driver, and if he, as soon as the driver released his grasp, jumped off, there is no evidence of negligence, and the verdict should be for defendant.

Answer: As that point is stated, with reference to all of the evidence in this case, I cannot affirm it.  I have said to you

Opinion of the Court.

that the matters which are referred to in the point are material
and important, if you shall be of the opinion that this boy had
discretion to an extent sufficient for him to be allowed to re-
main upon the front platform.　In that case, you would regard
the circumstances set forth in the point as of great weight, in
leading you toward the opinion that the boy was guilty of con-
tributory negligence, and therefore not entitled to recover.[5]

6. Under all the evidence the verdict should be for the de-
fendant.

Answer: I refuse to affirm this point.[6]

The jury returned a verdict in favor of the plaintiff for
$6,000.　Judgment having been entered, the defendant took
this appeal, assigning for error:

1–4. The portions of the charge embraced in [ ] [1 to 4]

5, 6. The answers to the defendant's points.[5] [6]

*Mr. Samuel Gustine Thompson,* for the appellant.

Counsel cited: Phila. etc. R. Co. v. Spearen, 47 Pa. 305;
Reeves v. Railroad Co., 30 Pa. 461; Phila. etc. Ry. Co. v.
Hassard, 75 Pa. 377; Pittsb. etc. Ry. Co. v. Caldwell, 74 Pa.
425; West Philadelphia Pass. Ry. Co. v. Gallagher, 108 Pa.
524.

*Mr. Silas W. Pettit* (with him *Mr. John R. Read*), for the
appellee.

Counsel cited: Taylor v. Canal Co., 113 Pa. 162; Biddle v.
Railway Co., 112 Pa. 551; Pittsb. etc. Ry. Co. v. Donahue, 70
Pa. 119; Crissey v. Railway Co., 75 Pa. 83; Phila. etc. Ry.
Co. v. Hassard, 75 Pa. 367; Pittsb. etc. Ry. Co. v. Caldwell,
74 Pa. 421.

OPINION, MR. JUSTICE CLARK:

In the case of an adult, or of a person reasonably competent
to care for himself, it has never been held that the front plat-
form of a crowded street-passenger car is a place of known
danger, or that it is an act of negligence per se, either upon
part of the company or of the passenger, that the latter is per-
mitted to or does actually occupy that place when the car is in
motion.　On the contrary, in West Phila. etc. Ry. Co. v.

Gallagher, 108 Pa. 524, where a boy under fourteen years of age got upon the lower step of the front platform of a crowded street car, and rode for a long distance as a passenger, and was finally thrown off by the jolting of the car, it was held not to be negligence per se, when the passenger occupied this place upon the car without objection of the driver or conductor, but that the questions of negligence, and contributory negligence, under all the circumstances, taking into consideration the age and capacity of the lad, were for the jury. The carrier, however, is bound to higher care and vigilance when the platform is crowded, in proportion as that place is more dangerous than a seat inside the car; and, in the event of an injury, this fact will be considered, in connection with all the circumstances of the case, in determining the responsibility of the carrier: Crissey v. Railway Co., 75 Pa. 83.

But in the case of a passenger who is obviously and manifestly incompetent, either from extreme youth or other cause, to exercise any proper judgment or discretion for his own safety, a somewhat larger measure of duty may be said to devolve upon the conductor of a car, than under ordinary circumstances. In Pittsb. etc. Ry. Co. v. Caldwell, 74 Pa. 421, a little girl of five years of age, in company with another of eleven, was permitted to ride on the front platform of a street car: when she came near to her home she attempted to get off, and was injured. Mr. Justice WILLIAMS, in delivering the opinion of the court, said: "It was gross negligence to allow children of that age to get on the platform and to ride there. If they got on without his (the conductor's) permission, instead of consenting that they might ride on the platform it was the duty of the company to compel them to go inside, or to stop and put them off." It must be conceded, of course, that he is not held to the exercise of critical skill or judgment; for the performance of his ordinary duties, in a crowded car, may give him little opportunity to observe closely the capacity or intelligence of a particular person in his charge. He is, in this respect, held only to the exercise of that degree of discrimination which a reasonably prudent and observing man would be expected to exercise under the circumstances. His duties require him to give his attention not only to those who may wish to board the car, but to those who wish to leave it, as well as to

such as remain.   It is his duty to collect the fares, regulate the movements of the car, and generally to conduct the affairs of the company in his charge.   He may, therefore, when the car is crowded and passengers are passing in and out, have little chance to test with accuracy the intelligence or capacity of the individual passengers.   But he is bound to give his undivided attention to his business, and if any person boards his car who is obviously incompetent to choose a place of safety, or whom he knows, or as an observing and prudent man ought to know, to be thus incompetent, it is his duty to exercise the highest care and vigilance consistent with the performance of his ordinary duties, for his safety : Phila. etc. Ry. Co. v. Hassard, 75 Pa. 367.

The plaintiff, at the time of the injury, was a lad of eight years of age, and was held to the exercise of that degree of care and discretion ordinarily to be expected of a child of that age : Smith v. O'Connor, 48 Pa. 218 ; Crissey v. Railway Co., 75 Pa. 86.   On the day of the occurrence, he had been visiting the St. John's Orphan Asylum on Lancaster Avenue and Forty-eighth street.   Returning home, he took the one-horse Hestonville car, coming in from Fairmount, at Forty-eighth street, and rode to the depot at Forty-third street, where passengers are transferred to the defendant's two-horse cars to be carried into the city.   The plaintiff states that he had paid his fare on the Hestonville car, and that upon leaving that one, he had demanded a transfer ticket ; that the conductor gave him none, but told him to get on the other car, and that he did as he was directed. He says the two-horse car was crowded, and there were probably eight or ten transfers ; that the back platform was full, and that he with the other transfer passengers was directed " to go up on the front."   He says, however, that he " got upon the back platform first," and " went up in the front ; " that he " went inside " and " went up in the middle—up in the car "— " went all the way up—up to the front of the car."   In this the plaintiff's testimony differs from that of all his own witnesses, who say that he boarded the car at the front platform, and remained there until the time of the injury.   Even the conductor says he " thinks he entered the car by the front platform," but he states positively that he was within the car before the car started.   It is highly probable that the little boy's statement

is the correct one, as he could not well be mistaken as to a fact so likely to be remembered, and which he states so positively and circumstantially. Under the circumstances, he might well be supposed to know exactly what he did better than any of the passengers or the conductor, who at this particular moment had no interest or concern in him or his movements. He was a small boy, and in the confusion caused by the entry of eight or ten passengers, might readily have worked his way through the crowded car without being observed.

If the statement made by the plaintiff is true, and certainly he cannot complain if the facts are assumed to be as he himself states them, he was, in fact, inside the car when it started, as the conductor states he was; and it would seem that he voluntarily and without the knowledge of the conductor pushed through to the front platform, where his companion was and where the conductor found him at and immediately before the time of the injury. The jury found that the conductor had not put the plaintiff into the car at the front door, and this is probably true, but if by any means he had, in fact, entered the car, the conductor's duty in this respect was done. The car had only proceeded a little more than a square from the depot, when the conductor, having collected the fares on the rear platform and in the body of the car, came forward, opened the wicket in the front door, and demanded the fares of those on the front platform, among whom were these two boys. What then occurred is stated by the plaintiff's witnesses substantially as follows: The conductor asked McCoy, the larger boy, for his fare; McCoy replied that he had paid his fare on the other car. The conductor said that was "an old guy," that he was "trying to steal a ride;" that he must either pay his fare, or he would have to get off. This conversation was addressed to McCoy, but was within the hearing of the plaintiff. The conductor opened the door, and, as he did so, the plaintiff stepped with one foot down on the step of the car, and, holding to the iron support at the side of the car, attempted to get off backward. The driver caught him, and placed him back on the platform, saying, "Don't you get off, you will fall," but almost immediately thereafter he repeated the act; and, although the driver again attempted to push him back, he was either thrown off, or jumped off, backward, receiving the injury complained

of. There is no evidence of a permission to ride on the front platform, except such as might be inferred from what occurred after the conductor came to the front door, and we think sufficient time did not elapse after that, nor was anything said or done to justify any fair or reasonable inference of the conductor's permission to that effect. The whole occurrence appears to have been the affair of a few moments; almost at the instant when the door opened the injury occurred. Mrs. Doris says the time was not perceptible. If there was any evidence of negligence on the part of the conductor, it was certainly a mere scintilla.

In his charge to the jury the learned judge entirely overlooked the plaintiff's own statement as to how he came upon the front platform. The case was submitted to the jury exclusively upon the testimony of the other witnesses. The plaintiff was examined as to his competency, at the instance of his own counsel, and was found to be qualified. His testimony was taken in his own interest, and it seems reasonable that his statement and admissions under oath, at the trial, against his own interest, ought not to have been wholly ignored, or withdrawn from the jury. It may be that a party, when he takes the stand as a witness in his own behalf, is not absolutely concluded by his own testimony, but when he testifies in a circumstantial and detailed manner as to a fact peculiarly within his knowledge, and which if believed would prevent his recovery, his testimony is certainly not to be entirely disregarded upon the mere assumption that he may have been mistaken; especially is this true, when he is not recalled to explain or retract the statement.

If the plaintiff's own testimony is true, and we cannot assume that it is either mistaken or false, then the sixth assignment of error should have been sustained; that is to say, there is not evidence from which the negligence of the company can fairly be inferred. The first and sixth of the defendant's points were submitted upon the plaintiff's statement of his own case; and, whilst perhaps the defendant was not in strictness entitled to an unqualified affirmation, the answers and the charge tended to mislead the jury, and upon this ground

The judgment is reversed, and a venire facias de novo awarded.