Statement of Facts.

## FRANCIS DRAKE v. PENNA. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF ERIE COUNTY.

Argued May 1, 1890—Decided January 5, 1891.

1. A passenger's consent to the reasonable regulations of a railroad company, in regard to entering and leaving its trains, is implied; and for an injury which results to him from his voluntary disregard thereof, the company is not liable: Sullivan v. Railroad Co., 30 Pa. 234; Penna. R. Co. v. Zebe, 33 Pa. 318; s. c., 37 Pa. 420.

2. When a passenger knows that on one side of the track no platform or place for alighting from trains has been provided, and that there is a safe and convenient platform, upon the other side, for the use of passengers in entering and leaving trains, such knowledge is notice of a rule of the company that passengers shall get on and off trains at said platform.

3. When a railroad company has provided safe and convenient means of ingress and egress to and from its trains, upon one side of its track, it has in this particular discharged its whole duty to passengers, and it is not bound to anticipate that, in disregard of its reasonable and known regulations, they will alight upon the opposite side.

4. Wherefore, a passenger, who, with notice of a regulation requiring him to alight from his train upon the south side of the track, voluntarily alights upon the north side, and, in alighting, is injured by falling into an unguarded excavation made by the railroad company, cannot recover damages from the company for his injuries.

5. The fact that the company has permitted persons residing north of its road to cross its right of way and track on foot, at different points in the vicinity of its station building, in going between different parts of the town, is not a waiver of its regulations affecting its passengers, nor a permission to them to alight on the north side.

6. Evidence that occasionally a passenger would get off on the north side of the company's trains, cannot affect the rights and duties of the passenger, when it is not shown that the railroad company consented to or had knowledge of such practice, nor is such testimony admissible: Penna. R. Co. v. Zebe, 37 Pa. 420.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 412 January Term 1890, Sup. Ct.; court below, No. 143 February Term 1888, C. P.

On January 19, 1888, Francis Drake brought trespass against

the Pennsylvania Railroad Company, lessee of the Philadelphia and Erie railroad, to recover damages for personal injuries received by the plaintiff, in consequence, as it was alleged, of the defendant company's negligence. The defendant's plea was not guilty.

At the trial on October 9, 1889, the following facts were shown:

The plaintiff was a resident of Union City. On December 9, 1887, being in Erie, and receiving word that his sister was dangerously sick, he started home on a train leaving Erie at 5 o'clock P. M., on the Philadelphia and Erie railroad, leased and operated by the defendant company. When the train reached Union City, it was quite dark.

The station building at that place was on the south side of the railroad. Between the building and the main track ran a side track, which was used, inter alia, as a passing siding. The space between the station building and the side track was occupied by a plank platform, from which at intervals planked ways passed across the siding to the main track. These ways were for the use of the baggage trucks in conveying baggage to and from trains. The spaces between the planked ways were filled up, as high as the planks, with the screenings of ballast quarries and gravel, packed tightly, which made a smooth hard surface. There was thus practically a continuous platform between the building and the main track. On the north side of the main track there was no platform for passengers to alight upon. Several witnesses testified that they had alighted, or had seen other persons alighting, from trains upon that side of the railroad. One witness testified for the plaintiff that, with the ground on the north side of the track in its usual condition, he would consider it safer to alight on that side than on the side next the station house, if it were dark and if a train should be passing upon the side track at the time. This witness and others testified that they had seen trains passing on the side track, while passenger trains were standing at the station on the main track.

The testimony for the plaintiff tended to prove that for many years, people living in the vicinity had been in the habit of crossing the railroad, in front of the station building, without objection by the railroad company, for the purpose of shorten-

Charge of Court below.

ing the distance to be traveled in going to and from their work, and that several well-worn paths, so used, ran from the north side of the company's tracks to certain houses and to a neighboring street. One of these paths led directly to the house in which the plaintiff's sister resided. When the train stopped at Union City, being anxious about his sister and in haste to ascertain her condition, the plaintiff stepped from the car, upon the north side of it, at or near the point where the path last mentioned reached the railroad, intending to go by that path to his sister's house. During the day workmen employed by the railroad company had dug a trench along the north side of the railroad and across this path, to carry off the waste water from a hydrant. It was open, unguarded, and without any light or other warning to indicate its presence. The trench was so close to the track that when the plaintiff stepped off the car, he fell directly into it from the car step. Its depth was from four to five feet, and, as the lower step of the car was about two feet above the surface of the ground, the height of the plaintiff's fall was from six to seven feet. The consequence of his fall was a dislocation of his thigh which resulted in a permanent injury. Upon cross-examination, the plaintiff testified as follows:

" Q. The train stopped at the station? A. Yes, sir. Q. There was no difficulty as to time in getting off; you had ample time to get off. A. Yes, sir; I got off. . . . . Q. You knew that the depot was lighted up? A. They always had a light in the telegraph office there. . . . . Q. Isn't there also a lamp outside, and wasn't there then? A. There was a small lamp. Q. On the outside? A. Yes, sir. Q. Then there was nothing to prevent you from getting out on the depot side if you had wanted to? A. No, sir."

At the close of the testimony, the court, GUNNISON, P. J., charged the jury as follows:

Had the plaintiff sustained his injury while walking over the path or approaching the path over which the public had been allowed to pass for years, there would be a question of fact to be submitted to the jury. To dig a trench upon their premises across such a path, without protection of some kind against accident, would be negligence on the part of the defendant, and they would be liable for the injuries which naturally resulted there-

Charge of Court below.

from in the absence of contributory negligence on the part of the plaintiff. Or, had the plaintiff, as was proposed in his offer of evidence, admitted under objection, shown that there existed a custom, with the knowledge and acquiescence of the defendant, for passengers to get on and off from the train on the north side of the track, there would be a question for the jury. But the plaintiff's own testimony shows that he was not walking when he stepped into the ditch, but stepped directly from the car into it. He was bound to alight from the car upon the platform erected for that purpose. That was a reasonable regulation of the railroad company.

The company, if negligent in not placing warnings or barriers at the ditch, were liable for the natural and probable results of that negligence such as they might reasonably foresee. They ought to foresee that people would be liable to walk over their tracks to cross the land to and from High street, if they had for a number of years been permitted to do so, and an accident resulting upon an attempt to so cross would be natural and probable. But they were not bound to foresee that a passenger would, on a dark night, in violation of the reasonable regulations of the company, without knowing the condition of the ground, alight upon a side of the car opposite the safe and convenient platform provided for that purpose, stepping directly into the ditch, and receive injuries thereby. Had he alighted upon the platform, and afterwards sustained the injury in crossing the track and land of the defendant, it would have been a different case. The injury would then have resulted from the negligence of the defendant, and whether there was contributory negligence or not, it would be a question to be passed upon by the jury. But the injury resulted, not while he was exercising the right enjoyed by the public, but in consequence of and while he was alighting from the car in a place forbidden by the defendant and where he had no right to alight. He may have had a right to walk there, but he had no right to alight from the train there. There was evidence from which to infer a license from the company to pass over their premises; but there was no evidence from which the jury could find a license to alight from the train on that side of the track.

A person claiming a right to use the property of another for any purpose, relying for proof of his right on a custom of the

public known to and acquiesced in by the owner of the land, cannot sustain a claim beyond and more extensive than the custom itself. Here the only custom and the only license enjoyed by the plaintiff or others upon the land of the defendant, which has been proven to have been with the knowledge and acquiescence of the defendant, was the privilege of passing over its property. It has not been shown that any person was ever permitted by the company to alight from the train upon the north side of the track, or that any one ever did so alight to its knowledge.

It follows that the negligence of the plaintiff materially contributed to produce the injury sustained by him, and no other course remains but to so instruct the jury.

—The jury returned a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered, when the plaintiff took this appeal, specifying that the court erred:

1. In withdrawing the case from the jury and directing a verdict for the defendant.

*Mr. William A. Galbraith* (with him *Mr. Davenport Galbraith*), for the appellant:

1. There can be no question that the defendant company was grossly negligent in leaving an open ditch, without light or guard, on a dark night, at a point where the public had for many years crossed and re-crossed without any objection on the part of its agents and employees. But the court below held that the plaintiff was negligent in alighting on the side of the car away from the station building. Negligence is the absence of care according to the circumstances. What constitutes such absence of care is a question for the jury, except when the facts developed at the trial fall within a fixed standard, or show a case where the measure of duty has been defined by law; and, even when the act done is an evident breach of a duty fixed by law, it is only when the act of negligence is unexplained or unexcused by the particular circumstances of the case, that the court is justified in taking the question of negligence from the jury: Penna. R. Co. v. White, 88 Pa. 333; Johnson v. Railroad Co., 70 Pa. 357; Penna. R. Co. v. Peters, 116 Pa. 206; McQuilken v. Railroad Co., 16 Am. & Eng. R. Cas. 353; Mc-

Neal v. Railway Co., 131 Pa. 184; Delaware etc. R. Co. v. Jones, 128 Pa. 308; Neslie v. Pass. Ry. Co., 113 Pa. 300; Penna. R. Co. v. Coon, 111 Pa. 430; Schum v. Railroad Co., 107 Pa. 8.

2. The defendant relies greatly on Penna. R. Co. v. Zebe, 33 Pa. 318; but that decision was governed by a consideration with which we have nothing to do in this case. Zebe's son stepped down from the car and immediately upon another track, the very existence of which was notice to him of his danger, and a warning to exercise caution. This alone was enough to constitute contributory negligence. But the plaintiff in this case, by alighting on the north side of the track, avoided the very danger which in the Zebe case was the cause of the accident; he avoided the necessity of crossing a track used for passing trains. He knew that the public were in the habit of crossing the track, and had crossed it himself at the point where he attempted to alight, and he had a right to expect that the railroad company would keep the roadway in a safe condition for the use to which it was subjected. There is no contributory negligence in not looking out for danger when there is no reason to anticipate any: Reeves v. Railroad Co., 30 Pa. 454. Can he be said to have been negligent per se, because he did not cross the south track to the station platform, preliminary to exercising his undoubted right to pass over the very spot where he attempted to alight in the first place? Can the court say, as matter of law, what a prudent man would have done? Yet that is the standard to be applied: Reeves v. Railroad Co., 30 Pa. 461.

3. To say that such facts as that the plaintiff would have had to cross a track to reach the platform, while on the north side of the car there was no track to cross, and that he had reason to think that the footing on that side was still safe and good, as he knew it had been a short time before, are to be brushed aside by the court, is to say that duties do not arise out of circumstances, and that a rule, once laid down by the court, is to be inexorably applied, no matter what may be the particular circumstances of the case begotten by the railroad company itself. See the contrary of this stated in Johnson v. Railroad Co., 70 Pa. 357. Penna. R. Co. v. Zebe, supra, is an illustration of a case where the facts fall within a fixed standard. But

Arguments.

would the passenger be bound to alight on the side toward the platform, if he had to cross a dozen tracks to reach it, and if, on the opposite side there were no tracks at all, but a common way used by the public for many years? Evidently not. Therefore, somewhere between the two extremes, that exhibited by the Zebe case, and our supposed case of a dozen or more tracks intervening, the standard of the passenger's duty shifts; and as there is no rule to tell us where it shifts, or where the course which constituted negligence per se in the one case, would become that of a prudent man in the other, the question of negligence becomes one for the jury: Schum v. Railroad Co., 107 Pa. 8.

4. We rely on the following facts as taking this case out of the general rule that passengers must alight on the side next the platform: (*a*) There was no platform on either side of the car, on which the plaintiff could alight and which would be notice to him of a regulation that he must get off on that side; the space between the north and south tracks was filled with broken stone, except at the points where baggage was wheeled across. (*b*) The station platform could be reached only by crossing a track over which trains were accustomed to pass, even while passenger trains were standing upon the north track discharging passengers. (*c*) It had been the custom of the public for many years to cross the defendant's tracks at the point where the plaintiff was injured, without objection. (*d*) Well worn paths ran from the north side of the track to the houses facing the railroad, one of which started from the point where the plaintiff fell into the excavation. The testimony for the plaintiff establishing these facts must be accepted as true, and the court must draw therefrom every inference which a jury could draw: Fisher v. Railway Co., 131 Pa. 292. We think the court erred in holding that a custom of persons living on the north side of the railroad, to alight on that side from the cars, was not shown. Testimony by such persons that they and others have been in the habit of doing this, is sufficient: Phila. etc. R. Co. v. Troutman, 11 W. N. 453. It is almost impossible, and is unnecessary, to prove knowledge of and direct acquiescence in such a custom, on the part of the railroad company. Whether it did acquiesce was for the jury: Taylor v. Canal Co., 113 Pa. 162.

Opinion of the Court.

*Mr. J. Ross Thompson,* for the appellee :

A passenger impliedly assents to all the company's reasonable rules and regulations, and if injury befall him by reason of his disregard of regulations necessary to the conduct of its business, he cannot recover damages : Sullivan v. Railroad Co., 30 Pa. 234; Penna. R. Co. v. Zebe, 37 Pa. 420 ; Penna. R. Co. v. Zebe, 33 Pa. 318. Two facts are conclusively established in this case : (*a*) That the company had a safe and convenient platform, and (*b*) that the plaintiff, in disregard of its plain, reasonable regulation, left the car on the opposite side and immediately landed in the ditch. The case is thus brought directly within Penna. R. Co. v. Zebe, supra. ˙ Suppose that passengers did occasionally get off on the north side : knowledge of this was not brought home to the company, and such a violation of its rules would not justify their violation by the plaintiff. That the company did not by force or barriers prevent people from leaving on the wrong side, was not negligence : Penna. R. Co. v. Zebe, 33 Pa. 318. There were no " circumstances begotten by the railroad company " to take this case out of the general rule. The plaintiff was negligent, and the court was justified in giving binding instructions.

OPINION, MR. JUSTICE MCCOLLUM :

The appellant was a passenger on the defendant company's train on a dark night in December, 1887, and in alighting from it at Union station, stepped into a deep ditch by the side of the roadbed and was injured. A portion of this ditch was dug by the company that day, for purposes appurtenant to its road, and there were no lights or guards near it. It was on the north side of the track, and the depot was on the south side of it. The appellant was, and for twelve years previous thereto had been, a resident of Union, and his house was near the depot. He was well acquainted with the locality; he knew there was no platform or place provided by the company for its passengers to alight on the north side of the track, and that it had constructed a safe and convenient platform in connection with its depot on the south side of it, for their use in entering and leaving its trains. This knowledge was notice to him of a rule of the company that they should get on and off there. In violation of this rule, which it was his duty to con-

form to, he refused the safe means of exit and stepped into the ditch on the other side, and for the consequences of his leap in the dark seeks to hold the company responsible.

A passenger's consent to a reasonable regulation of the company for entering and leaving its trains, is implied, and for an injury which results from his voluntary disregard of it the company is not liable: Sullivan v. Railroad Co., 30 Pa. 234. In the present case it affirmatively and sufficiently appears in the testimony produced by the appellant, that the company had provided safe and convenient means of ingress and egress to and from its trains, and in this particular had discharged its whole duty to its passengers. It was under no obligation to them to provide a convenient place to alight on the north side; nor to keep its right of way there free of obstructions for the benefit of pedestrians. It was not bound to anticipate and guard against the consequences of a violation by its passengers of its reasonable and known regulations for their protection. It is admitted by the appellant that his observance of these regulations would have insured his safe exit from the train, and it is obvious that the injury he received was the direct consequence of his disregard of them. It was his neglect of a duty he owed to the company, and not its neglect of a duty it owed to him, which caused the injury, and is a sufficient answer to his demand that the company shall compensate him for it. This is the rule distinctly laid down in Sullivan v. Railroad Co., supra, and enforced in Penna. R. Co. v. Zebe, 33 Pa. 318, and 37 Pa. 420.

In this case, there was nothing to justify or excuse the appellant's deliberate disregard of the rules of the company. It was prompted by a desire to shorten the walk from the train to his destination. A moment's time and a few rods in distance were all that he could save by it, and neither was of unusual importance to him. It was claimed and proved that the company had permitted persons residing north of its road to cross its right of way and track on foot, at different points in the vicinity of the depot, in going to and returning from their work or business in other parts of the town. But in this there was no waiver of its regulations affecting its passengers, nor permission to them to alight on the north side. There was a little evidence to the effect that occasionally a passenger got

off there, but none that the company consented to or knew of it, and the learned judge correctly ruled that the rights and duties of the appellant were not affected by it.    In Penna. R. Co. v. Zebe, supra, it was held that the admission of such evidence was error.    This case is clearly within the principle of the authorities cited, and

The judgment is affirmed.