## Tiers *v.* Pennsylvania Railroad Co., Appellant.

*Negligence—Railroads—Stations—Passengers — Crossing tracks —Permissive crossing.*

1. A railroad company owes protection to one as a passenger from the time he becomes such until arriving at the point of destination, including a reasonable period in which to alight and leave the premises.

2. If the railroad company provides a safe platform, or other equally safe means for exit, it is the duty of the passenger to leave by such safe means of egress.

3. It is the duty of a passenger to traverse fixed crossings over the tracks, when such ways are furnished for his safety.

4. A passenger injured by falling into an excavation within the tracks, cannot claim that she fell at a permissive crossing, where

there is no evidence to show that she fell on a definite path allowed by the railroad company to be traversed by the public, in addition to the regular crossings provided.

5. Where a railroad company provides, at a station, lighted platforms five hundred and fifty feet long on each side of its running tracks, and connects them one with the other with plank cross walks over the tracks at three points, a passenger is guilty of contributory negligence if it appears that at night she attempted to cross over the tracks at another point than the cross walks, and was injured by falling into an excavation opened up between the tracks in the regular repair work of the company.

Argued September 28, 1927.    Before FRAZER, WALL-ING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 127, March T., 1927, by defendant, from judgment of C. P. Allegheny Co., April T., 1926, No. 1526, on verdict for plaintiff, in case of Anna F. Tiers v. Pennsylvania Railroad Company.    Reversed.

Trespass for personal injuries.    Before REID, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $10,000.    Defendant appealed.

*Error assigned* was refusal of judgment for defendant n. o. v., quoting record.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellant.—Defendant was not liable: P. R. R. v. Zebe, 37 Pa. 420; Drake v. R. R., 137 Pa. 352; Sullivan v. R. R., 30 Pa. 234; Deery v. R. R., 163 Pa. 403; Flanagan v. R. R., 181 Pa. 237; Seltzer v. R. R., 69 Pa. Superior Ct. 309; Griggin v. R. R., 67 Pa. Superior Ct. 392; Buchanan v. Grove City, 86 Pa. Superior Ct. 178; Haven v. Bridge Co., 151 Pa. 620; Purcell v. Riebe, 227 Pa. 503.

*Richard C. Long,* for appellee.—The case was for the jury: Hunter v. Pope, 289 Pa. 560; Wiles v. Emerson-Brantingham Co., 267 Pa. 47; Simon v. Myers, 284 Pa. 3; Buckley v. R. R., 275 Pa. 360; Steele v. Lake Shore,

etc., Ry., 238 Pa. 295; Conn v. R. R., 288 Pa. 494; Powell
v. Ry., 220 Pa. 638; Keifner v. Ry., 223 Pa. 50; Lynn
v. R. R., 267 Pa. 41.

OPINION BY MR. JUSTICE SADLER, April 9, 1928:

Miss Tiers brought this action of trespass to recover
damages from the defendant for injuries sustained by
falling into a depression between its tracks, where they
pass a suburban station known as Oakmont. The ques-
tion of liability was submitted to the jury, and a verdict
rendered for plaintiff, upon which judgment was en-
tered, and this appeal followed. A description of the
locus in quo is essential to a proper understanding of
the questions involved.

The two-track railroad runs north and south through
Oakmont, and is paralleled by two streets, the one at
the east having an elevation of 12 or 15 feet, from which
steps lead to a platform below. On each side of the rail-
way are brick platforms some 550 feet in length, used
for loading and unloading passengers. The station it-
self is on the west side with a frontage of about 100
feet, with shelter sheds extending beyond, that to the
south being about 47 feet in length. The platforms are
connected by three planked crossings, one at each end,
north and south, and a third, known as the baggage
crossing, located north of the center. At other points
between these platforms the tracks are uncovered, are
not ballasted above the top of the ties, and no fixed or
definite path or paths across them appear, or had ever
been established.

The steps leading down from Oakmont Avenue on the
east, already referred to, descended to a point almost
opposite the men's waiting room, located in the southern
half of the station building. From this position it was
about 230 feet to the regular crossing at the south, and
110 feet from the first of the two located at the north.
South of the shelter, attached to the station, was a
taxicab stand, and it was to reach this destination that

the plaintiff was proceeding when injured. It may also be noted that, parallel with the main tracks on the west, there was a, siding, and on this were laid bricks to the top of the rails, so that passengers could freely pass over the same, differing in this respect from the condition of the main tracks, where there was ballast only to the top of the ties. Along both platforms were lights, and Miss Tiers testified that she had no difficulty in seeing along the one where she walked. She was familiar, from years of observation, with the tracks, crossings and surroundings.

On the evening of the accident, plaintiff returned by train from Pittsburgh, and alighted on the east platform from the front of the last car, south of the Oakmont Avenue steps. She walked to the rear of the car, and evidently some distance beyond, intending to cross the railroad and secure a taxi. Instead of proceeding to the regular south passageway, plaintiff went over the tracks to the western side at a point almost opposite the cab stand, from 100 to 150 feet south of the steps, and considerably beyond the south line of the station. This is clear from the testimony of her own witnesses, and the fixed location of the place where the accident occurred. The defendant company had been engaged during the day in reballasting, and, in the course of this work, had removed the stones between the north- and south-bound tracks at the point where plaintiff fell. The refilling had not been completed, with the result that there was an unguarded depression. When Miss Tiers left the east platform to cross over to the west, she fell into the excavation and was injured, and it was for the damages thus sustained that this suit was brought.

A railroad company owes protection to one as a passenger from the time he becomes such until arriving at the point of destination, including a reasonable period in which to alight and leave the premises (Powell v. P. & R. Ry. Co., 220 Pa. 638), and where injury results,

the defendant is liable if it occurs by reason of failure to furnish a secure way by which he can depart. "On the other hand, if a safe platform, or other equally safe means be provided for exit, it is as much the duty of the passenger to leave by [such safe means of egress], as it is for him to remain inside of the cars when they are running": P. R. R. Co. v. Zebe, 37 Pa. 420, 423. Consent to comply with reasonable regulations made by the carrier, and to make use of the way provided, is implied: Derry v. C. & A. R. Co., 163 Pa. 403; Drake v. P. R. R. Co., 137 Pa. 352; Sullivan v. R. R., 30 Pa. 234.

In the instant case platforms were constructed for 550 feet on both the east and west side of the tracks, and three suitable crossings provided for passing within that space. There was no intersecting passageway in the remaining portion, where the ballast reached, as is usual, only to the top of the ties, with the rails exposed. It is the duty of the passenger to comply with the reasonable rules and regulations for entering and leaving the cars, by using the ways provided (Flanagan v. P., W. & B. R. Co., 181 Pa. 237), and it is equally his duty to traverse fixed crossings over the tracks, when such ways are furnished for his safety. The railroad company has the exclusive use of the right of way, and is not bound to anticipate that others will be found thereon, except at the points designated: Buckley v. B. & O. R. R. Co., 275 Pa. 360; Bailey v. L. V. R. R. Co., 220 Pa. 516; Seltzer v. B. & O. R. R. Co., 69 Pa. Superior Ct. 309.

Miss Tiers stepped safely onto the lighted east platform with which she was thoroughly acquainted. She walked about one-half way to the regular southern crossing, but, instead of continuing thus, she went over the intervening tracks toward the taxi stand, which was beyond the south line of the station, and stepped into the excavation. In this case there was nothing to justify or excuse the disregard of her duty to make use of a

regular passageway; her conduct was prompted solely by a desire to shorten the walk to the point of destination: Drake v. P. R. R. Co., supra. The regular crossings clearly indicated the proper place for passing (Irey v. P. R. R. Co., 132 Pa. 563), and there was no necessity for taking another course.

It is urged, however, that the railroad company had theretofore impliedly consented to crossing by passengers at any point between the platforms, and, therefore, liability attached, notwithstanding the fact that regular passageways had been supplied. If the evidence established a definite permissive point of crossing, and while traversing such path plaintiff was injured, a recovery might be had. That was the situation presented to the court in Steele v. L. S. & M. Ry. Co., 238 Pa. 295, relied on by appellee. There the regular walk was obstructed, and plaintiff followed a well-defined beaten way along and over the tracks at a point beyond; she was injured while so doing, and a recovery permitted, but no such facts appear here.

The learned court below was of opinion that the evidence, showing that parties crossed for many years at a place opposite or near the middle steps leading from Oakmont Avenue over to the station, indicated a permissive crossing, and therefore defendant was liable. There is no evidence that there was any defined passageway at or near the place mentioned, and the only theory upon which responsibility could attach must be based on a finding that the entire space of 550 feet between the two platforms constituted, by reason of user, a consentable crossing. Even if the testimony established that there was a recognized path between the steps and the station on the other side, plaintiff was not injured there, but 100 feet to the south, and half way to the one regularly planked.

What constitutes a permissive crossing has been the subject of careful consideration and discussion by Mr. Justice FRAZER, in Conn v. P. R. R. Co., 288 Pa. 494,

in which the following statements are made: "A permissive way is a license to pass over the property of another; it may be either express or implied, but must, however, be restricted to a well-defined location...... One cannot maintain a prescriptive right by showing that he was in the habit of crossing another's land, but not upon any definite way or any particular route or line...... The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing, or generally confer upon such persons a character or right other than that of trespassers...... In whatever place a public right of way over railroad property, whether permissive or by some stronger claim of right, may be located, certainly some sort of physical designations are necessary to point out its course...... A crossing over a railway must have some limitations; the way across must be confined to a limit of user. It would be preposterous to suppose that a railroad company would permit a crossing over its property, where the public at its pleasure traveled over many different places on a wide area of the company's land."

The realization of the necessity for establishing a defined passageway, if recovery was to be had in this case, is shown by the effort of appellee to prove a consentable crossing from or near the steps to the opposite side. Even if this had appeared, the accident occurred a considerable distance therefrom. The rule that the limits of the way must be capable of some reasonable definition was recognized by the trial judge in the charge, wherein it was said, "It cannot be possible that the plaintiff, or the public, at or about the vicinity of this station, should consider the whole frontage of that station, some five hundred feet, as a ground for a permissive crossing." The court below, in overruling the motion for judgment n. o. v., was of opinion that it was for the jury to say whether there was an implied in-

vitation to cross from the middle steps to the station, but lost sight of the fact that, even if this was true, the plaintiff was not making use of such passageway, but traversing the rails more than 100 feet to the south.

An examination of plaintiff's testimony will show not an attempt to establish the right to traverse the tracks at any defined place, but over the entire distance between the platforms, though three regular crossings were included within that frontage. Thus, Miss Tiers testified to the permissive crossing not only in front of the station, but anywhere between the platforms. Elwood and Kuhn said people would cut across at any place, and Ross that it was used at any point opposite the station, which was 100 feet long. Johnson, Blackburn and Bair testified there was a path over to the steps, but not an ordinary crossing, and, as we have noted, plaintiff was not hurt at the place mentioned. Drill, Mrs. Blackburn and McCue told of people crossing at the rear of the train, wherever it would come to a standstill, though far from the steps and any possible path leading to them. There was no evidence to show that plaintiff was hurt while in the line of any used passageway, unless the entire space between the platforms be considered as such, though the tracks were not covered to the top so as to furnish an invitation to pass over, and there were three regular points provided for such purpose. "The mere fact that a railway track is frequently used as a walkway, or frequently crossed, and that no active steps were taken to stop them, would not justify the presumption of a license": Conn. v. P. R. R. Co., supra, 509. See also, Gray v. P. R. R., 000 Pa. 000.

It is undoubtedly the law that a railroad company may make itself responsible to passengers occupying other than ordinary positions if invited by it to use the location where the injury occurs. An illustration of this is found where employees of the carrier request passengers to alight from a train on the side where no

platform has been provided. The same is doubtless true where some definite path is allowed to be traversed by the public in lieu of or in addition to a regular crossing which has been provided, but a permission to pass along the beaten track gives no right to trespass on the tracks of the railroad: Brague v. N. C. Ry. Co., 192 Pa. 242. The rule generally recognized has been thus stated: "A railroad company has the right to determine the routes by which passengers shall enter and leave its trains and premises, and, where it has made safe and suitable arrangements for the exit by passengers from its station grounds, a passenger must use the ways provided, and where he knowingly fails so to do and without invitation makes his exit in some other way, he ceases to be a passenger and becomes at most a mere licensee; and it makes no difference that he goes where others, with the knowledge of the carrier, have gone before him, unless there is some invitation on the part of the carrier, and knowledge of such use does not of itself amount to such invitation": 10 C. J. 627.

The application of this principle is well illustrated in Legge v. N. Y., N. H. & H. R. R. Co., 197 Mass. 88, 83 N. E. 367, where the alighting passenger crossed the tracks from the station for his own convenience at a point other than the regular crossing which had been provided, and recovery was denied. It was there said: "While it is true that a corporation operating a railroad is bound to use proper care to see that a passenger, who alights from one of its cars at a station provided for that purpose, has a safe way of exit from its grounds, and that the relation of passenger continues until such exit is completed, yet, where proper arrangements have been made for such exit, it is the duty of the passenger to use them; and, if he knowingly fails to do so, and without any invitation, either express or fairly to be implied from the situation and arrangement of the station and grounds, leaves the way marked out by the

defendant, and proceeds to make his exit in some other way, he ceases from that moment to be a passenger, and becomes a trespasser, or, at the most, a mere licensee. ......Nor does it make any difference that he goes where others, with the knowledge of the railroad company, have gone before him, unless there is some invitation, express or implied, upon the part of the company.    Knowledge of such use, where proper arrangements have been otherwise provided, does not, of itself, amount to such invitation." Like determination will be found in Sturgis v. D., H. & M. Ry. Co., 72 Mich. 619, 40 N. W. 914; I. C. R. Co. v. Oberhoefer, 76 Ill. App. 672; Parsons v. N. Y. C. & H. R. R. R. Co., 32 N. Y. Supp. 598.

The mere fact that the public generally may use the tracks of a railroad company to walk upon, other than to cross at fixed points, is not sufficient to impose liability upon it: Kaseman v. Sunbury Boro., 197 Pa. 162. If it were bound to keep constant guard against the possible presence of others, wherever it was customary for trespassers or licensees to enter upon its right of way, a proper operation of trains for the convenience of the public would be rendered most difficult, if not impracticable. It is bound to take due precautions to protect those at grade crossings established by law, or definitely fixed by consent, but cannot be held to the same degree of watchfulness in the use of its tracks generally, to the occupation of which it has the exclusive right, and is not bound to guard against the possibility of intruders thereon. To hold, as here insisted, that the entire distance of 550 feet between the two platforms was a crossing of that width, because individuals have entered upon the tracks anywhere within that limit, whether passing at right-angles, diagonally or longitudinally, would go far beyond any rule of liability recognized by our authorities, and cannot be accepted as a true measure of responsibility.    The defendant made proper provision for moving from the

east to the west platform, and was charged with knowledge of their possible use by passengers. It was bound to keep those ways in proper condition, but this duty did not extend beyond those supplied, as to which there is no claim of insufficiency, or lack of repair, making the selection of some other course necessary.

A careful consideration of the record convinces us that the plaintiff cannot recover, as she failed to show that her injury occurred within the line of a path used impliedly by invitation of the company. On the contrary, it appears that, for her own convenience, she voluntarily left the platform by a way other than one of the safe exits provided by the defendant, and crossed the track, falling into the excavation. For such injury the defendant cannot be held liable.

The judgment is reversed and is here entered for the defendant.