Koontz et al. *v.* Baltimore & Ohio R. R. Co., Appellant.

Argued April 21, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*J. Earl Ogle, Jr.,* with him *George M. Spence,* for appellant.—Unless there is sufficient proof that a permissive crossing existed at the point where the child was injured, it was error to enter judgment: Smith v. R. R., 274 Pa. 97; Conn v. R. R., 288 Pa. 494.

The testimony will not support an inference that a beaten path led across the tracks, and it appears without contradiction that pedestrians crossed by many different and divergent routes and that the location of the alleged permissive way was almost continuously blocked by standing cars: Ely v. Ry., 158 Pa. 233; Zenzil v. R. R., 257 Pa. 473.

Young Koontz was not on a permissive way when injured: Zenzil v. R. R., 257 Pa. 473; Magier v. Ry., 257 Pa. 383; Mulligan v. Traction Co., 241 Pa. 139.

The undisputed promiscuous use of the tracks in the storage yards precludes a recovery.

There is no evidence that the trainmen knew or should have known that the boys were on the track.

*Percy Allen Rose,* for appellees.—Plaintiffs' proof was sufficient to establish a permissive crossing: Conn v. R. R., 288 Pa. 494; Smith v. Ry., 274 Pa. 97; Osalek v. R. R., 295 Pa. 553.

The train crew of defendant company knew or should have known that young Koontz and his companions were attempting to cross its railroad tracks by crawling under the freight train: Gray v. R. R., 293 Pa. 28; Cover v. Transit Co., 290 Pa. 551.

OPINION BY MR. JUSTICE DREW, September 26, 1932:

The plaintiffs, father and son, recovered verdicts against the defendant in this action of trespass on the ground that the minor plaintiff was injured while using a permissive crossing, as a result of the negligence of the defendant. Having assigned as error the refusal of its motion for binding instructions, the overruling of its motion for judgment n. o. v., and the entry of judgments, the defendant appealed, insisting that there was no permissive crossing and that it was in no sense guilty of negligence.

A description of the locus in quo is necessary for a proper understanding of the facts. The accident hap-

pened in a storage yard of the Hillman Coal & Coke Company in the small town of Jerome, in Somerset County. The town is divided by two parallel storage yards, constructed and maintained by the Hillman Company on its own land, used for the storage of coal cars, and served for transportation purposes by defendant. Yard No. 1 consists of four railroad tracks and yard No. 2 of two tracks, four or five hundred feet shorter than those in yard No. 1. The two yards are divided by an open space fifty to sixty feet wide. On the one side adjacent to yard No. 1 is located the business section of the town, including the school, post-office, bank and stores; on the other side, adjacent to yard No. 2, are a number of miners' residences, housing about one-half the population of the town. A public road around one end of the yards connects these two parts of Jerome, but the distance directly across the tracks is much shorter than that by way of the road, and for a long time many people were accustomed to reach the other side by going through the yards. In the open space between the two yards, and running parallel with them, is a drainage ditch from three to five feet in width. At intervals throughout its length, ties have been thrown by unknown persons across the ditch to form rough bridges; one of them, near the end of yard No. 2, consists of three railroad ties laid side by side, forming a rough but sufficient crossing for pedestrians over the ditch. This bridge was used more frequently than any of the others, because it was more carefully constructed; it was at the end of the tracks in yard No. 2, and it was not necessary to pass over or under cars on those tracks to reach it. Between the ditch and yard No. 1, a well defined path parallel with the tracks extended from the coal tipples to this bridge, and continued beyond to a small shed. Miners crossed the bridge from their houses and followed the path to their work at the tipples. An electric light is located in the yard about forty feet from the bridge, in the direction of the tipple. No reason for the location of the light at that place is

given. It appears from the evidence that between the bridge and the business section of the town, because of the location of coal cars stored upon the several tracks, many divergent routes were followed by persons crossing yard No. 1. The tracks were usually occupied by cars, obstructing the passage of anyone crossing the yard. Trains were never broken for the purpose of leaving a passage for the convenience of pedestrians at any point, and because there were usually a large number of cars in the yard, persons passing through it had either to walk around the end of the standing cars or go under or over them. For this reason they necessarily took different routes in crossing the yard.

On April 20, 1927, the minor plaintiff, then seven years old, on his way home from school with two other boys of about the same age, started across yard No. 1 toward the bridge over the ditch between the two yards. Finding their course blocked by standing cars on three of the four tracks, the boys attempted to cross by crawling underneath, and had safely negotiated two of them before coming to the last track of the yard, that nearest the ditch. They started to crawl under one of the cars blocking their path, but before they had reached the other side, the train was moved by employees of defendant, who were placing additional cars on the track. The minor plaintiff stated that before he went under the car he saw a locomotive standing some distance away, on the other side of the tipple, and that one of the crew was looking from its cab in his direction. Before he could get out from under the car, a wheel ran over his left arm, crushing it so severely that it had to be amputated near the shoulder. Neither of the other boys was injured. The accident occurred at a point about twenty feet from the bridge crossing the ditch.

The boys testified that the cars were moved without any warning signal being given by those in charge of the operation, and, on the ground that the accident occurred on a permissive way across the tracks, plaintiffs contend

that this failure to give warning constituted such negligence as to make the defendant answerable in damages. The defendant contends, on the other hand, that from the facts shown no permissive way can be found to exist, and that, therefore, in the absence of evidence that the trainmen knew or should have known of the presence of the boys on the track, no warning was required. Inasmuch as this case comes to us on appeal from the denial of a motion for judgment n. o. v., we must read the testimony in the light most favorable to the plaintiffs and give them the benefit of every fact and inference of fact pertaining to the issues involved, which may reasonably be deduced from the evidence: Muehlhof v. Reading Co., 309 Pa. 17. After doing that, we are of opinion that the judgments of the court below must be reversed. Instead of showing the existence of a permissive crossing, the evidence shows that no such crossing existed.

The question as to what constitutes a permissive crossing has been before us several times in recent years, and has been carefully considered and discussed by the present Chief Justice in Conn v. P. R. R. Co., 288 Pa. 494, in which the following statements were made: "A permissive way is a license to pass over the property of another; it may be either express or implied, but must, however, be restricted to a well defined location. ...... One cannot maintain a prescriptive right by showing that he was in the habit of crossing another's land, but not upon any definite way or any particular route or line. ...... The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing, or generally confer upon such persons a character or right other than that of trespassers. ...... A permissive crossing over railway property is not evolved from mere considerations of convenience nor from whimsical insistences of impatient people, nor from the erratic wanderings of adventurous children. ...... In whatever place a public right of way over railroad

property, whether permissive or by some stronger claim of right, may be located, certainly some sort of physical designations are necessary to point out its course. . . . . . A crossing over a railroad must have some limitations; the way across must be confined to a limit of user. It would be preposterous to suppose that a railroad company would permit a crossing over its property, where the public at its pleasure traveled over many different places on a wide area of the company's land. The way must be in the same place within definite limitations and not spread out over open ground in many divergent tracks." See also Smith v. Phila. & Reading Ry. Co., 274 Pa. 97; Tiers v. P. R. R. Co., 292 Pa. 522; Gray v. P. R. R. Co., 293 Pa. 28.

When the above principles are applied to the facts of this case, it seems clear that a permissive way did not exist. It is admited that there was no "definite way or any particular route or line" across the yard. As stated, a path ran parallel with the ditch, from the little bridge to the tipple, but since it did not cross the yard and could not be used for that purpose, it in no way is involved in this case. There was a path to the bridge across the vacant land at the end of yard No. 2, used by men going to work at the tipple and by persons who crossed through the yard to the business section of the town. After these latter had crossed the bridge, they could only traverse the yard in whatever way was open to them at the time; since the position of cars on the tracks changed almost daily, their routes likewise varied. We are aware, of course, that owing to the nature of the material ballasting the tracks, any path across them would not be clearly visible. But, while it is not disputed that the yard was frequently used by the inhabitants of the town in crossing from one side to the other, the testimony indicates that many different and divergent routes were followed, depending upon the destination of these pedestrians and the location of cars standing upon the tracks. Furthermore, while it appears that

the path over the bridge led to one side of yard No. 1, there is not a scintilla of evidence to show that any path led to the yard on the opposite side. If there were a permissive way across the yard, with a well marked path leading to the tracks, it would seem that there would necessarily be a well defined path leading away from the tracks on the opposite side. The most favorable construction that can be placed on the testimony is that it shows a definite way or path to the yard, and nothing to indicate the existence of any path across the tracks or to or from them on the other side. It seems to us that plaintiffs completely failed to prove the existence of a permissive way.

The minor plaintiff was a trespasser on the tracks when injured. The defendant was under no duty to take precautions against possible injury to him: Brague v. Ry. Co., 192 Pa. 242. His youth imposed no higher duty on defendant, until his danger was discovered, than if he had been an adult. No warning was required until the trainmen knew or should have known of his presence: Conn v. P. R. R. Co., supra; Gray v. P. R. R. Co., supra. It does not appear that any of them knew of his presence, and the fact that some of the crew knew that pedestrians occasionally used the yard as a short-cut did not charge them with such notice. If, as we said in Tiers v. P. R. R. Co., supra, a railroad "were bound to keep constant guard against the possible presence of others, wherever it was customary for trespassers or licensees to enter upon its right-of-way, a proper operation of trains for the convenience of the public would be rendered most difficult, if not impracticable." There was no evidence to indicate wilful or wanton negligence on the part of defendant's employees.

After a careful consideration of the record we are convinced that the minor plaintiff, on the occasion of this unfortunate accident, was a trespasser upon the tracks served by the defendant. As the evidence failed to establish negligence on the part of defendant, binding instruc-

tions should have been granted as asked for, and, having been refused, judgments n. o. v. should later have been entered.

The judgments are reversed and here entered for defendant.