# Lodge, Appellant, *v.* Pittsburgh & Lake Erie Railroad Company.

*Negligence—Railroads — Permissive crossings — Minor — Contributory negligence.*

1. When a railroad company has for many years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing; and whether in a given case such reasonable care has been exercised or not, is ordinarily a question for the jury under all the evidence.

2. The measure of a child's responsibility is his capacity to see and appreciate danger, and the rule is, that in the absence of clear evidence of lack of discretion, he will be held to such measure thereof as is usual in those of his age and experience. This

measure varies with each additional year, and the increase of responsibility is gradual. It makes no sudden leap at the age of fourteen. That is simply the convenient point at which the law, founded upon experience, changes the presumption of capacity, and puts upon the infant the burden of showing his personal want of the intelligence, prudence, foresight, or strength usual in those of such age.

3. In an action against a railroad company to recover damages for the death of plaintiffs' son, a boy eleven and a half years old, it appeared that defendant's railroad, in passing through a borough, consisted of three parallel tracks running alongside of a river. At the point where the accident occurred, boys and men had been accustomed for many years to cross the railroad tracks in order to reach the river for bathing and fishing and at times as many as fifty or sixty persons would cross in one day. There was a well-defined path worn on each side of the railroad and upon the cinders on the roadbed. There was an embankment five or six feet high along the side of the railroad, but it was "sort of washed out" and those crossing the tracks could easily get up and down to and from the river. Deceased started with three companions to go to the river to swim. When the boys came to the railroad a freight train was passing and while waiting for it to pass they stood between the tracks. While standing there a passenger train came along, running at the rate of about fifty miles an hour. The last seen of deceased alive was when he was standing in the path between the two tracks. After the train passed he was found lying dead on the path. The trial court entered a judgment of compulsory nonsuit which it subsequently refused to take off. *Held,* error.


Argued Oct. 14, 1913. Appeal, No. 234, Oct. T., 1913, by plaintiffs, from order of C. P. Lawrence County, June T., 1908, No. 5, refusing to take off nonsuit, in case of Silas Lodge and Lucy Lodge, his wife, parents of Silas Dale Lodge, deceased, v. The Pittsburgh & Lake Erie Railroad Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.


Trespass to recover damages for death. Before POR-TER, P. J.

The opinion of the Supreme Court states the case.

The court entered a judgment of compulsory nonsuit

which it subsequently refused to take off.    Plaintiffs appealed.

*Error assigned* was in refusing to take off compulsory nonsuit.

*Robert K. Aiken,* for appellants.

*J. Norman Martin,* with him *Norman A. Martin,* of *Martin & Martin,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 5, 1914:

This is an appeal from the refusal of the court below to take off a judgment of compulsory nonsuit.    Plaintiffs' evidence tended to show that defendant's railroad, in passing through the Borough of Beaver Falls, consists of three parallel tracks running on the west side of a stream known as the Beaver river or creek.    At the point where the accident occurred boys and men had been accustomed for many years to cross the railroad tracks in order to reach the river for bathing and fishing and at times as many as fifty or sixty persons would cross in one day.    There was a well-defined path worn on each side of the railroad and upon the cinders on the road bed.    There is an embankment five or six feet high along the side of the railroad, but it is "sort of washed out" and those crossing the tracks can easily get up and down, at the river.

On August 14, 1907, at about one o'clock p. m., a son of the plaintiffs', named Silas Dale Lodge, who was about eleven years and six months old, started with three companions to go to the river to swim.    When the boys came to the railroad, a freight train was passing, and while waiting for it to pass, they stood between the tracks.    While standing there, a passenger train came along, running at the rate of about fifty miles an hour. The last seen of Dale Lodge alive, was when he was standing on the path between the two tracks.    After the

trains passed he was found lying dead on the path.  The passenger train stopped, and backed up and took up the body.  There was ample testimony to support a finding that the place in question was a permissive crossing for people on foot.  It appeared that it had been so used for many years.  That a path had been there before the railroad was built, and that this path continued in use across the railroad, as a means of access to the river at that point.  And that during the months of July and August, some fifty or sixty boys and men would use that path as a crossing place each day.  The rule of law applicable to such a situation was definitely stated in Taylor v. Canal Company, 113 Pa. 162, by Mr. Justice STERRETT, who after citing certain cases, said (p. 175): "The principle clearly settled by the foregoing, and many other cases that might be cited, is that when a railroad company has for years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing; and whether in a given case such reasonable care has been exercised, or not, is ordinarily a question for the jury under all the evidence."

In the present case, the acquiescence of the defendant company for so long a period, in the crossing of its tracks at the point in question by pedestrians, amounted to a license to cross.  The defendant could have withdrawn its permission to the public to use a path over the tracks at that place, but until it did so, it was bound to use reasonable precautions in the management of its trains, to prevent injury to pedestrians.  Had this accident befallen an adult, who was at the time standing upon the tracks and waiting for a train to pass, he might as a matter of law, very justly and properly have been held guilty of contributory negligence.  But the boy who was killed was between eleven and twelve years of age.  The question of his capacity to comprehend and guard against the peril he was in, was for the consideration of the jury,

under proper instructions from the court: Strawbridge v. Bradford, 128 Pa. 200. This rule was quoted with approval in Kelly v. Traction Company, 204 Pa. 623, (p. 626). In that case the boy was the same age as in the case at bar.

In Kehler v. Schwenk, 144 Pa. 348, Mr. Justice MITCHELL said (p. 359): "All the cases agree that the measure of a child's responsibility is his capacity to see and appreciate danger, and the rule is that, in the absence of clear evidence or lack of it, he will be held to such measure of discretion as is usual in those of his age and experience. This measure varies, of course, with each additional year, and the increase of responsibility is gradual. It makes no sudden leap at the age of fourteen. That is simply the convenient point at which the law, founded upon experience, changes the presumption of capacity, and puts upon the infant the burden of showing his personal want of the intelligence, prudence, foresight, or strength usual in those of such age. The standard remains the same, to wit, the average capacity of others in his condition. That this is the rule as to children under fourteen, is held in all our cases from Rauch v. Lloyd, 31 Pa. 358, to Sandford v. Railroad Co., 136 Pa. 84."

If the jury should find that the path was a permissive crossing of the tracks, then the fact that the boy showed a lack of good judgment in starting across the path before the freight train had gone entirely by, and in standing for a short time in the space between the tracks waiting for the train to pass, would not make of him a trespasser. It may, if the jury so conclude, be sufficient to charge him with contributory negligence. But we cannot, under the circumstances regard his act as a trespass upon the property of the defendant company. The question of defendant's negligence was also for the jury. It was for them to say whether the running of a train at the rate of fifty miles an hour, within the limits of a borough, at a point where at least fifty or sixty men and

boys daily crossed its tracks, was in accordance with prudence and a reasonable regard for the safety of the public.

The judgment of the court below is reversed, with a procedendo.