## Figard et al. *v.* Pennsylvania Railroad Company, Appellant.

Argued March 22, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Paul D. Larimer,* with him *Harry A. Englehart* and *Englehart & Larimer,* for appellant.

*Frank P. Barnhart,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 11, 1949:

In the late hours of a June afternoon a two-year-old child sitting on the outer end of a tie on a railroad track was struck and injured by a slowly moving freight train. In a suit brought against the railroad company by the parents in their own right and by the father as guardian of the minor child verdicts were rendered in favor of the plaintiffs. The defendant now appeals from the refusal of the court below to grant either its motion for a new trial or its motion for judgment n. o. v.

The issues in controversy were purely factual. Plaintiffs asserted that the place where the accident occurred was a permissive crossing, whereas defendant contended that the evidence did not establish the existence of any such crossing. Plaintiffs claimed, while defendant denied, that the crew of the train were negligent in not stopping it in time to avoid the accident after they saw or should have seen the child on the track.

The law as to permissive crossings is clear. When a railroad company has for years, without objection, permitted the public to cross its tracks at a given point, there arises the same legal obligation of reasonable care on its part toward those using such crossing as if it were a public one: *Taylor v. Delaware & Hudson Canal Co.,* 113 Pa. 162, 8 A. 43; *Lodge v. Pittsburgh & Lake Erie R. R. Co.,* 243 Pa. 10, 89 A. 790; *Francis v. Baltimore & Ohio R. R. Co.,* 247 Pa. 425, 93 A. 490.

The Pennsylvania Railroad Company operated a singletrack line in Cambria County from Beaverdale to South Fork, which, at the village of Ruthford two miles west of Beaverdale, crossed a branch of the Conemaugh River on a trestle bridge. Immediately east of this bridge and along the south side of the railroad there was stretched at intervals a group of some ten houses, in one

of which plaintiffs resided. The gate leading out from plaintiffs' property was but a few feet distant from the railroad and there was a well defined footpath extending from the gate to the track. A public highway paralleled the railroad on the north; plaintiffs and their neighbors owned mail boxes on the side of this highway, to reach which it was therefore necessary for them to cross the track. There was testimony to the effect that for several years plaintiffs had been in the habit of walking along the pathway from their gate to the railroad and there, at a point 46 feet east of the trestle bridge, crossing the track in order to reach their mail box or for other business or social purposes; likewise residents of the neighboring houses would walk along the creek until they reached plaintiffs' pathway, follow it to the track, and there cross the railroad; plaintiffs' children too would cross the track at that point in order to meet their school bus which ran along the highway. In short, it was definitely established that, for a length of time amply sufficient for the railroad company to have become aware of such practice, people in the village of Ruthford habitually crossed the track at its junction with the pathway leading from plaintiffs' property. It is true that on the north side there was no marked continuation of the path to any particular objective and persons going across would fan out there in various directions according to their respective destinations, but that fact would not affect the legal consequences flowing from the existence of a definite point of permissive crossing, it being wholly immaterial, if such a crossing existed, whether there was any distinct pathway beyond. It is also true that residents of some of the houses to the east crossed the track immediately in front of their own properties instead of at the end of plaintiffs' pathway, and that, generally speaking, a permissive right of way must be confined within definite lines and not spread out over open ground in many divergent directions: *Conn v. Pennsylvania R. R.*, 288 Pa. 494, 136 A. 779; *Koontz v.*

*Baltimore & Ohio R. R. Co.,* 309 Pa. 122, 163 A. 212. But if, at a given point, there is a defined and limited area of crossing which has been habitually used for many years, the rights of those using it cannot be impaired by the mere fact that other crossings, not so well defined or limited, may exist at other places along the track.

Plaintiffs produced testimony to the effect that when the child was sitting on the railroad tie it was at a point "directly out" from plaintiffs' pathway and therefore within the lines of the crossing as to which the claimed right of way existed. That being so, it was not a trespasser and the defendant company owed it the duty of reasonable care. There was testimony that, as the train, which was moving westerly from Beaverdale, approached the permissive crossing, no whistle was blown or bell rung, and even though such signals, if given, would have been futile because a child of such tender age would probably not have paid attention to them, it was at least the duty of those operating the train to keep looking ahead in order to see if the track was clear and to make every reasonable effort to stop before striking the child on the crossing: *Piepke v. Philadelphia & Reading Rwy. Co.,* 242 Pa. 321, 89 A. 124; *Kremposky v. Mt. Jessup Coal Co., Ltd.,* 266 Pa. 568, 109 A. 766; *Ehly v. Philadelphia Reading Rwy. Co.,* 56 Pa. Superior Ct. 512. The train consisted of 45 loaded coal cars hauled by two engines on the front end facing backwards; it was proceeding at a speed of between 8 and 10 miles an hour. One of plaintiffs' neighbors saw the child and screamed, and it was only upon hearing that cry that the fireman on the leading engine observed the child on the track; apparently none of the other members of the crew saw it even then. One of the crew placed the train at the moment the woman screamed at a distance of only 200 to 225 feet, and another 320 feet, from the trestle bridge, but the engineer of the second locomotive fixed the distance at 400 to 450 feet. It was clearly for the jury to

determine whether, if the engineers and firemen had been looking ahead as they should have done in the exercise of ordinary care, they would have seen the child sooner than they did, or whether they did in fact see it sooner than they admitted at the trial: cf., *Peden v. Baltimore & Ohio Rwy. Co.*, 324 Pa. 444, 188 A. 586; it was also for the jury to say whether, after the child *was* seen, proper measures were taken to stop before striking it. All of these issues were conclusively disposed of by the verdict which the jury rendered.

No question is here raised in regard to contributory negligence. The parents had ten children and were people of moderate means; the mother had left the house temporarily in order to visit her brother, leaving this two-year-old child in the care of three of its sisters; however, it managed to wander away and onto the track.

It is clear that the court could not properly have granted defendant's motion for judgment n. o. v., nor is there a semblance of error in the record which would have required or justified the granting of a new trial.

Judgment affirmed.