## Henry v. Pennsylvania Railroad Company, Appellant.

Argued September 24, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Harry C. Golden,* for appellant.

*Robert E. Ashe,* with him *Charles E. Harrington* and *E. O. Golden,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 13, 1951:

To recover damages under the Wrongful Death and Survival Acts, W. Fred Henry, as administrator of the estate of Carl M. Zukas, deceased, and as trustee *ad litem* for all persons entitled to recover, brought an action in trespass against the Pennsylvania Railroad Company. The same plaintiff as administrator of the estate of Dorothy Zukas, deceased, and as trustee *ad litem* for all persons entitled to recover, brought a similar action against the same defendant. The cases were tried together and resulted in a verdict for the plaintiff in each case. Motions for judgment *non obstante veredicto* were refused, and from entry of judgments on the verdicts, these appeals were taken.

The accident which gave rise to the actions happened on the evening of December 6, 1948, at an alleged permissive crossing over a siding leading from appellant's main line near North Apollo, Armstrong County. The siding is owned by Preston Grimm and Kiski Stores, Incorporated. It is 800 feet long, and, after

leaving the main track in a northerly direction, curves to the northeast, to run roughly parallel to the main track. Adjacent to the east rail of the siding are two buildings, one owned by Preston Grimm near the curve of the siding, the other owned by Kiski Stores, the loading platform of the latter extending 200 feet along the track to the northeasterly end of the siding.

About midway between these buildings and on the land belonging to Kiski Stores is the crossing whereon the accident occurred. To the west of the Kiski Stores building and the siding lies a field which since 1946 had been used for various sports during the summer and fall months. Spectators watched the games, and as many as 50 or 60 at a time congregated on the field. Planks had been laid along the rails at the crossing so that vehicles could be driven over the siding. One approach to the crossing had been covered with ashes to build up a rough roadway. There was testimony that automobiles passed over the crossing conveying spectators to and from the ball field, and a bulldozer used in improving the field traversed the crossing. For a period of three years a nearby storekeeper used the crossing twice a week for the purpose of dumping garbage on the bank of the Kiskiminetas River lying west of the ball field. A witness testified that a photograph introduced into evidence showing the tracks of vehicles leading eastwardly to the crossing substantially represented the appearance of the eastern approach throughout three years prior to the accident.

Decedent, Carl Zukas, and his brother had entered into a written agreement with Kiski Stores which permitted them to build a loading ramp on the west side of the siding to be used in connection with their coal business. Without trespassing upon the land of others, the operation of this loading ramp could have taken place only by crossing over the siding.

On the evening of the accident Carl Zukas, his wife Dorothy, their daughter, Bonnie Lee Zukas, age three and a half years, a four year old niece, and John Poydence, a friend, drove across the siding to observe the proposed loading ramp site and a load of railroad ties which had been delivered there in connection with the ramp's construction. Returning therefrom Carl was driving, his wife sat next to him, John Poydence sat to her right, and the four year old niece stood on the floor in the front of the car. Zukas' daughter was alone in the rear seat. As the car approached the siding crossing which was about ten feet wide, Zukas stopped and, perceiving no danger, proceeded with the car in low or second gear. It was about 8:15 P. M., dark and misty at the time. The front wheels of the car had crossed both rails and the rear wheels were between the rails when the car was struck by a train consisting of an engine and nine or ten gondola freight cars which was backing in a northeasterly direction on the siding. The rear car of the train struck the automobile, turned it on its side and dragged it until it was crushed against the Kiski Stores building. Carl Zukas, his wife, and the four year old niece were killed.

The locomotive backing the freight cars was about 500 feet to the south, on the curve, with the Preston Grimm building blocking any view of the crossing from that point. No warning was given by the backing train, nor were there any lights on the slowly moving freight car, nor any railroad employes at the crossing to give warning.

Appellant contends that (1) the evidence did not establish a permissive crossing; (2) there was no evidence of negligence on appellant's part; and (3) contributory negligence barred recovery.

A permissive crossing is an express or implied license to pass over the property of another. It must be

restricted to a well-defined location and must be shown to be used frequently, continuously, and notoriously by the public: *Conn v. Pennsylvania Railroad,* 288 Pa. 494, 136 A. 779; *Koontz v. Baltimore & Ohio R. R. Co.,* 309 Pa. 122, 163 A. 212. Essential to the establishment of the permissive way is the well-defined location of the way in a limited area: *Conn v. Pennsylvania Railroad,* supra; *Koontz v. Baltimore & Ohio R. R. Co.,* supra; *Hamley v. Pittsburgh Railways Company,* 365 Pa. 543, 76 A. 2d 181. The crossing in the instant case was limited in area to about ten feet in width and was well-defined by the ruts worn in the dirt surface, the ashed approach, the planks laid along the tracks, and the worn down condition of the grass and weeds. The crossing was sufficiently well-defined and its user by the public sufficiently established to justify the finding by the jury that it was a permissive crossing.

In *Lodge v. Pittsburgh & Lake Erie Railroad Company,* 243 Pa. 10, 89 A. 790, as many as fifty or sixty men and boys a day crossed the tracks at a particular point during the season for swimming and fishing. It was pointed out there that the railroad could have withdrawn permission to the public to cross, but until it did, it was bound to use reasonable precautions in the management of its trains. Here the railroad company did not own the siding and may not have been able to prevent the use of the crossing by those who enjoyed an express or implied permissive use thereof from the owner, but this did not lessen the railroad company's duty of care. Under the evidence the railroad had actual, or at least implied notice of the user, and in the exercise of ordinary and reasonable care was required to give adequate warning of the approach of its train toward the crossing.

When a permissive crossing exists, the railroad is subject to a duty of care comparable to that required

of it at regular crossings. *Hamley v. Pittsburgh Railway Company*, supra; *Echon v. Pennsylvania Railroad Company*, 365 Pa. 529, 76 A. 2d 175; *Figard v. Pennsylvania Railroad Company*, 361 Pa. 380, 65 A. 2d 411.

It was undisputed that view of the engine from the crossing was blocked by the building on Preston Grimm's land, that there was no light on the rear car approaching the crossing, and that the flagman was at the curve of the siding, five car lengths from the engine and an equal distance from the end of the train. The failure to exercise the required degree of care is the same as that pointed out in *Echon v. Pennsylvania Railroad Company*, supra, p. 531, where it was said: "There was no one riding the stirrup on the rear of the engine's tender nor was there any employe of appellant deployed to determine whether there were any obstructions in the path of the engine as it proceeded to back, or persons who might have been using the permissive crossing at that time." There was ample evidence in the instant case to warrant the finding by the jury that appellant was guilty of negligence.

Against the presumption that the decedent, Carl Zukas, used due care in approaching and negotiating the permissive crossing, appellant contends that he was guilty of contributory negligence as a matter of law because of the violation of The Vehicle Code[1] in having

---

[1] Act of May 1, 1929, P. L. 905, art. X, §1001 (b), 75 PS §481: "Reckless driving is unlawful, and, for the purpose of this act, is construed to include the following:

. . . (b) If investigation into an accident arising from the use and operation of a motor vehicle discloses that the accident occurred due to the front seat of the motor vehicle having been occupied by more than three (3) persons: Provided, That this provision shall not apply to a motor vehicle, the front seat of which has been constructed to accommodate more than three (3) persons: And further provided, That there is sixteen (16) inches of seating capacity for each passenger or occupant so accommodated on said front seat."

four persons in the front of the automobile. Clearly this case comes within the rule of *McClelland v. Copeland,* 355 Pa. 405, 50 A. 2d 221, where Mr. Justice JONES clarified the application of The Vehicle Code in this connection and dispelled the notion that the presence of more than three persons on the front seat of an automobile may be considered negligence *per se* as a matter of law. Appellant relies upon *Mahoney v. City of Pittsburgh,* 320 Pa. 44, 181 A. 590, to support his contention, but in the *McClelland* case, supra, at page 411, it was said: "But, plainly enough, this court did not hold in the Mahoney case that the plaintiff was guilty of contributory negligence as a matter of law merely because he was one of four persons occupying the front seat of the automobile involved in the accident there in question." What the statute contemplates is a causal connection between the occupancy of the front seat by more than three persons and an accident involving the vehicle. It nowhere appears that occupancy of the front seat by any number of persons in any way contributed to the accident here.

Most of appellant's argument in these appeals is based on factual issues that were for the jury and properly presented to that body by the learned trial judge in a comprehensive charge.

Judgments affirmed.