

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-1999

# Estate Zimmerman v. SEPTA

Precedential or Non-Precedential:

Docket 98-1631

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Estate Zimmerman v. SEPTA" (1999). *1999 Decisions.* Paper 52.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/52

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1631

ESTATE OF AARON ZIMMERMAN; KATHRYN WATKINS,
Administratrix a/k/a CATHERINE WATKINS, Executrix;
LINDA PARDO, Individually and as heir to the ESTATE
OF AARON ZIMMERMAN a/k/a AARON THOMAS
ZIMMERMAN

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY; AMTRAK; CONSOLIDATED RAIL; THE CITY
OF PHILADELPHIA

   ESTATE OF AARON ZIMMERMAN and KATHRYN
   WATKINS, Administratrix, a/k/a Catherine
   Watkins, Executrix, and LINDA PARDO, individually
   and as heir to the ESTATE OF AARON
   ZIMMERMAN a/k/a AARON ZIMMERMAN,
   Appellants

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 96-cv-6907
District Judge: Honorable Jan E. DuBois

Before: BECKER, Chief Judge, and SCIRICA and
ROSENN, Circuit Judges.

(Argued January 28, 1999)

(Filed February 26, 1999)

Frank J. Marcone (Argued)
2530 North Providence Road
Upper Providence, PA 19063
Counsel for Appellant

Wilfred T. Mills, Jr. (Argued)
Gallagher, Reilly & Lachat
2000 Market Street
Suite 1300
Philadelphia, PA 19103
Counsel for "SEPTA", et al.

Alan C. Ostrow (Argued)
City of Philadelphia Law Department
1515 Arch Street
One Parkway Bldg., 17th Floor
Philadelphia, PA 19102
Counsel for City of Philadelphia

OPINION OF THE COURT


ROSENN, Circuit Judge.

On August 6, 1994, the decedent Aaron Zimmerman, then twenty-three years of age, entered the area where trains run between 30th Street Station and Suburban Station in the City of Philadelphia, Pennsylvania. There he climbed to the top of a metal structure, which is approximately twenty-five feet tall and mounted in an upright position on a concrete foundation that supports a catenary at the top. A catenary is an arrangement of wires on a large steel framework. The wires connect the catenaries and carry high-voltage electricity to provide electric propulsion power for trains. While seated on the catenary crossbar, Zimmerman unfortunately received a fatal electrical shock.

On August 30, 1996, the plaintiffs, administratrix Kathryn Watkins and the decedent's mother, Linda Pardo, filed a wrongful death and survival action with the Court of Common Pleas of Delaware County, Pennsylvania. Essentially, the plaintiffs alleged that the negligence of Southeastern Pennsylvania Transportation Authority

2

("SEPTA"), Amtrak, Consolidated Rail Corporation ("Conrail"), and the City of Philadelphia ("City") caused Zimmerman's untimely and tragic death. Amtrak, asserting federal question jurisdiction under 28 U.S.C. S1331 based on its status as a federally chartered corporation in which the United States owns a majority of stock, removed the matter to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. S1441(a).

On June 22, 1998, the District Court granted summary judgment for the defendants. See Estate of Zimmerman v. Southeastern Penn. Transp. Auth., 17 F. Supp. 2d 372 (E.D. Pa. 1998). The plaintiffs timely appealed. We affirm.

I.

On August 6, 1994, eyewitnesses observed Zimmerman climb a concrete wall and an iron fence to gain access to the general area enclosing railroad tracks on which commuter trains travel. This section extends from 20th Street to 30th Street. A bridge at 20th Street and John F. Kennedy Boulevard bounds the east end of the track area. The catenary is located in the track area sixty feet west of the bridge and is raised from the track level and supported by a concrete foundation on the north side of the track area.

At midday, Zimmerman climbed the structure, reached the top, and sat on the crossbar of the catenary, where he was electrocuted. The electrocution caused a power outage. Following SEPTA policy, Paul Lazarus, the power director, quickly re-energized the circuit from his remote location at Wayne Junction station. Because Zimmerman was sitting on the catenary crossbar, which was grounded, the circuit would have been tripped once more if Zimmerman had been electrocuted again. But, the power was not cut off until SEPTA did so manually after being informed that Zimmerman was sitting on the catenary. Thereafter, firefighters removed Zimmerman from the catenary. Nine days later, he died from burns caused by the electrocution.

SEPTA admitted to having sole possession and control over the track area, including the catenary. Amtrak supplied the electricity to the wires that caused

3

Zimmerman's death. According to the uncontradicted evidence in the record, only SEPTA used the train tracks in this area.

The plaintiffs produced evidence that homeless people would enter the track area. Graffiti covered the inside wall nearby where Zimmerman was electrocuted. Paths led from John F. Kennedy Boulevard toward the track area. The plaintiffs secured written statements from witnesses who observed homeless people encroaching the track area. One witness wrote that he informed the police of people climbing the fence and entering the area. Another witness wrote that homeless people were in the track area "all the time" and that police periodically chased them away. However, there was no evidence that people climbed the catenary before Zimmerman's portentous ascent.

There are several small signs stating "Danger: Live Wire" on the concrete wall adjacent to the track area at and around the bridge on 20th Street. One sign also includes the message "Keep Off." The plaintiffs claim that none of the warning signs are visible from the accident sight. The photographic evidence neither confirms nor refutes this claim.

The District Court granted the defendants' motions for summary judgment. The Court held that Zimmerman was a trespasser and that no exception to the wantonness or willfulness standard for premises liability to trespassers applied. The Court concluded that the defendants acted neither wantonly nor willfully. The Court determined that Conrail and the City could not be liable for Zimmerman's death because they did not possess the track area or the catenary. The Court also held that Amtrak did not possess the land and owed no duty as the electricity supplier because Zimmerman did not lawfully come into proximity to the electricity.

II.

Our review of the District Court's grant of summary judgment is plenary. In re Baby Food Antitrust Litig., ___ F.3d ___, ___ (slip op. at 22) (3d Cir. 1999). "[T]here is no issue for trial unless there is sufficient evidence favoring

4

the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted).

The plaintiffs' wrongful death and survival action is founded on a negligence theory of liability.[1] Therefore, the plaintiffs must prove: (1) a duty owed to the decedent; (2) a breach of that duty by the defendants; (3) a causal connection between the defendants' breach and the resulting injury; and (4) injury suffered by the plaintiffs. See Estate of Swift v. Northeastern Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997). The failure to establish any one of these elements is a ground for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A.

Before we ascertain the extent of the duty owed to Zimmerman, we first decide which defendants, if any, owed Zimmerman a duty. The plaintiffs maintain that a genuine issue of material fact existed regarding whether all the defendants had a duty to prevent harm to Zimmerman because they purportedly had control over the area where Zimmerman was injured. The plaintiffs also argue that Amtrak, because it supplied the electricity that ran through the wires attached to the catenary, owed an additional duty to Zimmerman.

The duty to protect against known dangerous conditions falls upon the possessor of the land. Blackman v. Federal Realty Inv. Trust, 664 A.2d 139, 142 (Pa. Super. Ct. 1995);

_____

1. In this action, the District Court applied Pennsylvania law because the death and events leading up to it occurred in Pennsylvania. We do the same.

5

see also Rolick v. Collins Pine Co., 975 F.2d 1009, 1011 (3d Cir. 1992); Rossino v. Kovacs, 718 A.2d 755, 756-57 (Pa. 1998). The possessor of land occupies the land with the intent to control it. Bloom v. Waste Management Corp., 615 F. Supp. 1002, 1015 (E.D. Pa. 1985); Blackman, 664 A.2d at 142; see also Restatement (Second) of Torts S 328E(a) (1965).

There is uncontroverted evidence that SEPTA was the sole possessor of the track area. Therefore, only SEPTA owed Zimmerman a possessor's duty to entrants on its land. Nonetheless, the plaintiffs claim that the other defendants also incurred duties as land possessors. We disagree.

The plaintiffs argue that Amtrak and SEPTA allegedly had an agreement related to the maintenance of the catenary and the surrounding area and to liability for torts committed in that location. The plaintiffs, however, failed to produce such an agreement, and defense counsel denies its existence. No evidence in the record suggests that Amtrak possessed or controlled the track area or the catenary.

The plaintiffs also assert that Conrail possessed the property because Conrail used the tracks in the track area. The plaintiffs offer no evidence that Conrail utilized the railroad tracks. Besides, Conrail's alleged use of the tracks does not equate with possession. Access to land need not entail control over land.

Lastly, the plaintiffs maintain that the City owns the track area and claim that no evidence shows that the City did not own the property. The plaintiffs bear the burden of persuasion, and they failed to present evidence of the City's alleged ownership. Contrary to the plaintiffs' contention, they needed to produce that evidence in conjunction with its opposition to the City's summary judgment motion.

Thus, there is no genuine issue of material fact over whether Amtrak, Conrail, or the City possessed the track area. Accordingly, Amtrak, Conrail, and the City did not owe Zimmerman any duty of care flowing from their purported position as land possessors.

Nevertheless, Amtrak, as the supplier of electricity, owed Zimmerman a duty of care. The uncontradicted evidence in

the record establishes that Amtrak supplied the electricity that flowed through the wires attached to the catenary. Suppliers of electricity owe a duty of care to all people in proximity to the wires through which high-voltage electricity flows; the degree of care varies with the status of the injured person on the land. See Heller v. Consolidated Rail Corp., 576 F. Supp. 6, 12 n.7 (E.D. Pa. 1982), aff'd, 720 F.2d 662 (3d Cir. 1983). We do not agree with Amtrak's assertion that it owed a duty to Zimmerman only if he was lawfully in proximity to the electrical lines. Under Pennsylvania law, electricity suppliers owe a duty, albeit a limited one, to avoid wanton or willful injury to trespassers. See id. This rule comports with the notion that trespassers be given some, however modest, protection against tortfeasors. See, e.g., Barre v. Reading City Passenger Ry. Co., 26 A. 99, 100 (Pa. 1893) ("Even trespassers are entitled to humane consideration.").

Therefore, SEPTA, as the possessor of the track area, and Amtrak, as the supplier of electricity, owed Zimmerman a duty of care. As a matter of law, Conrail and the City had no duty to prevent harm to Zimmerman. Accordingly, the District Court did not err in entering summary judgment for Conrail and the City.

B.

Having concluded that SEPTA and Amtrak owed Zimmerman a duty of care, we must demarcate the extent of that duty. Zimmerman's status at the site of his injury plays a crucial role in determining the degree of care SEPTA and Amtrak owed Zimmerman.

The plaintiffs claim that there was an issue of material fact whether Zimmerman was a trespasser or a licensee. They theorize that the defendants, by permitting Zimmerman and other homeless people to enter and remain in the track area, may have given Zimmerman implied consent to be in the track area and, thus, Zimmerman may have been a licensee.

"A trespasser [is] `a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.' "

7

Rossino, 718 A.2d at 756-57 (quoting Restatement (Second) of Torts S 329 (1965)). "A licensee, on the other hand is `a person who is privileged to enter or remain on land only by virtue of the possessor's consent.' " Id. at 757 (quoting Restatement (Second) of Torts S 330 (1965)).

The plaintiffs cite no authority standing for the proposition that consent to use property can be implied by a failure to take sufficient precautions to prevent people from entering the land. The plaintiffs' theory seeks to turn every foreseeable trespasser into a licensee. However, the law recognizes that a foreseeable trespasser is still a trespasser. See Oswald v. Hausman, 548 A.2d 594, 598-99 (Pa. Super. Ct. 1988) (distinguishing foreseeable trespassers from licensees). Mere acquiescence to trespassing does not alter an entrant's status.

Even assuming arguendo that a possessor's assent to trespassing amounts to implied consent for using the land, uncontradicted evidence submitted by the plaintiffs demonstrates that SEPTA, the possessor of the track area, did not acquiesce to the presence of trespassers upon its land. Linda Holman, whose statement the plaintiffs submitted in opposition to summary judgment, wrote: "Back where [Zimmerman] was burned there are homeless people all the time. The police chase them and they come back." Gerald Peterson, whose statement the plaintiffs also secured, wrote: "I saw kids back there a few days before the burn incident with bicycles. The Amtrak police caught them." Thus, the evidence the plaintiffs submitted to show that people entered the track area also established that SEPTA utilized police to eject unauthorized persons from the track area. SEPTA did not acquiesce to the entry and use of the track area by persons who were not performing railroad-related work. Consequently, even if knowledge of people's presence on the land could create implied consent to use the land, a reasonable factfinder must conclude that SEPTA did not give Zimmerman implied permission to enter and remain in the track area.

The plaintiffs also maintain that there was a causeway that enabled unencumbered access from John F. Kennedy Boulevard to the track area. They apparently invoke the permissive crossing doctrine and maintain that the

8

causeway created an implied license for Zimmerman to enter and remain in the track area.

> A permissive crossing is an express or implied license to pass over the property of another. It must be restricted to a well-defined location and must be shown to be used frequently, continuously, and notoriously by the public. Essential to the establishment of the permissive way is the well-defined location of the way in a limited area.

Henry v. Pennsylvania R.R. Co., 84 A.2d 675, 677 (Pa. 1951) (citations omitted).

The permissive crossing doctrine is inapplicable in this case. The people who entered the track area without express permission did not briefly pass over the property in order to get to the other side of the tracks. Rather, they remained on the property for substantial periods of time. In cases where Pennsylvania courts have found a permissive crossing, the property was used as a crossing, not a haven. See, e.g., Shaw v. Pennsylvania R.R. Co., 96 A.2d 923, 925 (Pa. 1953); Henry, 84 A.2d at 676; Echon v. Pennsylvania R.R. Co., 76 A.2d 175, 178 & n.4 (Pa. 1950); Gaul v. Consolidated Rail Corp., 556 A.2d 892, 895 (Pa. Super. Ct. 1989). People, like Zimmerman, who do not intend to cross the property cannot successfully invoke the permissive crossing doctrine. See Scarborough v. Lewis, 518 A.2d 563, 565 (Pa. Super. Ct. 1986) (holding permissive crossing doctrine inapplicable where plaintiff did not intend to cross railroad tracks), rev'd on other grounds, 565 A.2d 122 (Pa. 1989). In addition, a permissive crossing must have a path that traverses railroad tracks, and there is no evidence of a path across the tracks in this case. See Hamley v. George, 76 A.2d 181, 183 (Pa. 1950) ("A permissive crossing is a defined foot path leading to and crossing over railway tracks, which is being habitually used and places upon the railway company a duty of care comparable to that required at a regular crossing."). Rather, the evidence merely presents a path leading toward the tracks. See Scarborough, 518 A.2d at 565, 573 (holding path leading toward tracks insufficient to create permissive crossing). Because the people, including Zimmerman, entering and remaining in the track area without express authorization

9

did not use the property as a mere crossing, the permissive crossing doctrine did not render Zimmerman an implied licensee.

Further, even if SEPTA had impliedly consented to permit Zimmerman to enter and remain in the track area, there is no evidence that SEPTA consented to permit Zimmerman to climb up and sit atop the catenary. Therefore, there is no genuine issue of material fact over Zimmerman's entrant classification. He was a trespasser as a matter of law. Accordingly, the plaintiffs must show that SEPTA or Amtrak committed wanton or willful negligence or misconduct. See Rossino, 718 A.2d at 756.

The plaintiffs contend that exceptions to the general duty owed to trespassers should heighten the defendants' standard of care in this case. The plaintiffs argue that the Restatement (Second) of Torts S 337, pertaining to highly dangerous artificial conditions encountered by known trespassers, imposes a more substantial duty on SEPTA than the duty to refrain from wantonly or willfully injuring the trespasser.

Section 337 provides:

> A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if
>
> (a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and
>
> (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

Restatement (Second) of Torts S 337 (1965).

The catenary, along with the electric wires, is properly classified as an artificial condition, rather than an activity or a force. However, Pennsylvania jurisprudence has not adopted this section of the Restatement. Under

10

Pennsylvania law, there is no heightened duty to foreseeable trespassers for artificial conditions. Micromanolis v. Woods School, Inc., 989 F.2d 696, 700 (3d Cir. 1993); Graham v. Sky Haven Coal, Inc., 563 A.2d 891, 896 & n.8 (Pa. Super. Ct. 1989). Consequently, SEPTA did not owe Zimmerman a heightened duty because of the catenary's danger. Besides, even if Pennsylvania adopted section 337 of the Restatement, SEPTA had no reason to believe that trespassers could not discover the dangerous condition or appreciate the risk.

The plaintiffs assert that SEPTA and Amtrak are subject to a heightened standard of care because the high-voltage electrical wire formed a dangerous instrumentality. Generally, the supplier of electricity or the possessor of land site owes a heightened, rather than an ordinary, degree of care to an entrant on land with high-voltage electrical transmission lines. See Stark v. Lehigh Foundries, Inc., 130 A.2d 123, 128-31 (Pa. 1957); Yoffee v. Pennsylvania Power & Light Co., 123 A.2d 636, 645 (Pa. 1956); Bailey v. Pennsylvania Elec. Co., 598 A.2d 41, 47 (Pa. Super. Ct. 1991); Beary v. Container Gen. Corp., 533 A.2d 716, 720 (Pa. Super. Ct. 1987). "However, this heightened duty of care extends only to those lawfully in proximity to the wires. The standard of care owed to trespassers by suppliers of electricity is a duty to avoid wilful and wanton injury." Heller, 576 F. Supp. at 12 n.7 (emphasis in original) (citation omitted); see also Dunnaway v. Duquesne Light Co., 423 F.2d 66, 69 n.2 (3d Cir. 1970) ("Under Pennsylvania law an electric company as the supplier of a dangerous agent is under a duty to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires." (internal quotations omitted)); Graham, 563 A.2d at 897 n.8 (noting Commonwealth's long-recognized rule limiting landowner's duty to trespasser to refraining from wanton or willful misconduct). In light of Zimmerman's status as a trespasser, SEPTA, as possessor of the land, and Amtrak, as supplier of the electricity, did not owe Zimmerman a heightened duty of care.

The plaintiffs claim that the child trespasser exception should apply in this case because, although he was twenty-

11

three years old when he was electrocuted, Zimmerman suffered from bipolar disorder and could not fully comprehend the danger he faced. The child trespasser exception, also known as the attractive nuisance doctrine, is limited to instances in which children unlawfully enter or remain on land. The law does not impose upon owners and possessors of land a higher duty to protect from injury adults with emotional disorders. Furthermore, the plaintiffs failed to present medical evidence suggesting that Zimmerman, because he was a manic depressive, had a diminished capacity to appreciate risks. Hence, the child trespasser exception does not apply to this case.

Thus, the District Court committed no error in concluding that the appropriate standard of care was the duty to refrain from wanton or willful misconduct.

C.

The plaintiffs assert that there was sufficient evidence of wanton misconduct to survive summary judgment. The plaintiffs claim that the defendants' insufficient warning of the wires' danger despite the regular trespassing on to the track area, as well as the re-energizing of the power lines without checking to see why the circuit had tripped, amounted to wanton misconduct.

> Wanton misconduct . . . means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

Evans v. Philadelphia Transp. Co., 212 A.2d 440, 443 (Pa. 1965) (internal quotations omitted); accord Dudley v. USX Corp., 606 A.2d 916, 922 (Pa. Super. Ct. 1992).

SEPTA did not commit wanton misconduct by allegedly inadequately posting warning signs pertaining to the electrical wires' danger. Although SEPTA was aware, or at least should have been aware, that trespassers entered and remained in the track area, SEPTA had no knowledge that trespassers climbed the catenary structure. The plaintiffs

12

submitted no evidence that anyone had climbed the structure or had been electrocuted on it before Zimmerman. Consequently, the risk of electrocution from climbing the catenary was not so great that more warning signs were required.

Knowledge of a specific risk cannot be imputed from knowledge of a general risk. In Micromanolis, this court held that the defendant's knowledge that trespassers swam in a pool did not equate with constructive knowledge of the risk that someone would dive into the middle of the unlighted pool at night without checking the water level. 989 F.2d at 702. Likewise, SEPTA's knowledge that people entered and remained in the track area does not equate with knowledge of the risk that someone would climb the catenary structure, sit on top of it, and get electrocuted.

Moreover, SEPTA did not commit wanton misconduct when Lazarus re-energized the circuit after Zimmerman had tripped it. The risk of harm caused by re energizing the circuit was low. Railroad circuits get tripped regularly; only rarely are they tripped by humans. See Carpenter v. Penn Central Transp. Co., 409 A.2d 37, 38 (Pa. Super. Ct. 1979) (noting in 1974 two of 1190 tripped circuits were caused by humans and most of others had been caused by birds, icicles, and other small objects contacting power lines). At the time Lazarus re-energized the line, he had no reason to believe that a human, rather than a bird, had tripped the circuit. There was little probability that harm would result from re-energizing the circuit. Besides, Zimmerman did not trip the circuit after Lazarus re-energized it; hence, Zimmerman was not electrocuted after Lazarus restored the power.

There is no genuine issue of material fact over whether SEPTA breached its duty to refrain from wanton or willful misconduct. Accordingly, the District Court did not err in granting summary judgment for SEPTA.

The plaintiffs presented no evidence that Amtrak, which was not responsible for the maintenance of the wires in the track area, committed wanton or willful misconduct with respect to its role as the supplier of electricity. Hence, Amtrak did not breach its duty to Zimmerman. Therefore,

13

the District Court committed no error in granting summary judgment for Amtrak.

D.

The plaintiffs argue that they should be able to demonstrate the defendants' negligence through the doctrine of res ipsa loquitur. They maintain that the District Court erred in holding that res ipsa loquitur could not be used to prove wanton or willful misconduct.

Res ipsa loquitur is "a shorthand expression for circumstantial proof of negligence." Gilbert v. Korvette, Inc., 327 A.2d 94, 99 (Pa. 1974).

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Id. at 100 (quoting Restatement (Second) of Torts S 328D (1965)).

We need not decide whether the doctrine is applicable to torts allegedly committed against trespassers because the plaintiffs have not established every element of the doctrine. See Micciche v. Eastern Elevator Co., 645 A.2d 278, 281 (Pa. Super. Ct. 1994) (holding plaintiff not entitled to res ipsa loquitur instruction because he failed to establish every element of doctrine). Most fundamentally, the evidence did not eliminate the possibility that Zimmerman's conduct had caused the electrocution. Zimmerman trespassed onto SEPTA property, climbed the catenary, and sat on top of the structure in close proximity to high-voltage wires. The danger posed by the wires was obvious. Even if Zimmerman had never seen the warning signs posted on the bridge at 20th Street, he should have realized that he was flirting with peril. A reasonable person

14

would have recognized that electrical wires running parallel and above train tracks posed a grave danger. Consequently, the plaintiffs cannot establish the second element of the res ipsa loquitur doctrine.

In addition, the plaintiffs have not presented sufficient evidence that the purported negligence fell within the scope of the defendants' duty to Zimmerman. SEPTA and Amtrak had a duty to refrain from wanton or willful conduct. As discussed above, no reasonable factfinder could conclude that either SEPTA or Amtrak intentionally injured Zimmerman or disregarded a known high risk. The District Court did not err in concluding that the plaintiffs' case could not survive summary judgment on a res ipsa loquitur theory.

III.

The judgment of the District Court will be affirmed. Costs to be taxed against the appellants.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15