

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2004

# Laurie v. Natl RR Passenger

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2041

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Laurie v. Natl RR Passenger" (2004). *2004 Decisions.* Paper 466.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/466

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2041

CLINT ROBERT LAURIE, SR.,
INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF
BARBARA ANN LAURIE, DECEASED, AND BARBARA ANN BEATTY,
                                                                              Appellants

v.

NATIONAL PASSENGER RAILROAD CORPORATION, a/k/a Amtrak;
CSX TRANS CORP.;
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY;
*MULTIHERM CORP.; *HAVERTOWN PARTNERSHIP;
HELEN C. JACOBS; ROBERT H. JACOBS; THOMAS L. JACOBS

(*Dismissed See Court's Order 1/12/04)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 01-cv-06145
(Honorable John P. Fullam)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2004

Before: SCIRICA, *Chief Judge*, RENDELL and ALARCÓN*, *Circuit Judges*

*The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

At issue is whether the District Court erred in granting summary judgment for defendants, the National Railroad Passenger Corporation ("Amtrak") and other entities, in this wrongful death/survival action.  We will affirm the judgment of the District Court.

**I.**

On November 24, 1999, the decedent, sixteen-year-old Barbara Ann Laurie, was struck and killed by an Amtrak train.  On that day, the decedent and her fifteen-year-old brother celebrated her sixteenth birthday by skipping school to go to Philadelphia for the day.  To get to and from Philadelphia, they proceeded across the main line of defendant Amtrak's railroad tracks.  The accident occurred on their return trip, while in the Borough of Colwyn.

In the vicinity of the accident, there are no public streets or vehicular thoroughfares that cross the tracks.  Plaintiffs alleged that pedestrians frequently crossed the tracks in this area and that Amtrak had documented at least 176 instances of unauthorized activity in this area of the tracks during the four year period before decedent's death.  Around 1977, Amtrak erected a fence along the Philadelphia side of the railroad, but at the time of the accident, the fence was in a state of disrepair with an

opening in the fence through which the decedent and her brother entered the property. On the Colwyn side of the tracks, Amtrak had erected "No Trespassing" signs at the edge of a parking lot.

At the accident site, there are four parallel railroad tracks. At the point where the accident occurred, the tracks are several feet higher than the adjacent land on the Philadelphia side of the railroad but approximately level with the land on the Colwyn Borough side of the tracks. To get to the railroad tracks, the decedent and her brother walked along a rubble-strewn area behind a commercial property occupied by a beer distributor. From that point, they proceeded along a narrow but discernible path through thick underbrush to the edge of the bank of ballast supporting the railroad tracks. They then climbed up the embankment and proceeded on a diagonal path across the tracks toward their destination, which was the parking lot on the Colwyn side of the railroad.

When the accident occurred, the decedent was proceeding between the rails of the first set of tracks she encountered. The train approached her from an S curve configuration that prevented her from seeing the train until it was close. When she became aware of the oncoming train, she hastened to move from its path. Thinking the train was approaching on the track she was occupying, she moved to her left, to the second set of tracks, into the path of the oncoming train. The train was traveling at a speed between 90 and 100 miles per hour.

On November 16, 2001, plaintiffs filed this wrongful death suit against Amtrak in the Philadelphia County Court of Common Pleas. Amtrak removed to the United States District Court for the Eastern District of Pennsylvania. After discovery, Amtrak filed a motion for summary judgment, contending the decedent was a trespasser who was well aware of the obvious dangers of walking on a railroad track. Plaintiffs responded, contending the decedent was a licensee who was struck at a permissive crossing and that Amtrak breached its duty of care by not fencing or patrolling the area of the accident, which was known to be dangerous. Plaintiffs also filed a supplemental opposition to Amtrak's motion.

On March 3, 2003, the scheduled trial date, the District Court heard oral argument on Amtrak's motion. In response to a question from the Court, plaintiffs' attorney acknowledged that plaintiffs were not asserting a claim that the engineer was negligent in operating the train. Postponing the trial, the District Court permitted further briefing on whether the accident site could be considered a permissive crossing when Amtrak had erected a fence to keep people off the tracks, and whether Amtrak had breached a duty of care, assuming a permissive crossing existed. Plaintiffs submitted a supplemental response in which they alleged the Amtrak engineer was negligent because he blew his horn only after he saw the decedent, instead of blowing it before he came to a permissive crossing.

4

The District Court granted the motion for summary judgment and entered judgment in favor of Amtrak and the other defendants. *Laurie v. Amtrak*, 2003 U.S. Dist. LEXIS 4910, *9 (E.D. Pa. Mar. 11, 2003). The District Court stated it was "doubtful" that the evidence supported a finding of a "permissive crossing" but declined to rule on the matter because it was a "factual issue" inappropriate for resolution at the summary judgment stage and because it was not necessary to do so for resolution of the case. *Id.* at *5-6. The District Court held that even if the accident site were a permissive crossing, the evidence was not sufficient to prove wanton recklessness or ordinary negligence under Pennsylvania law. *Id.* at *6. The Court stated plaintiffs had not alleged that "any action or inaction by those operating the train . . . was negligent." *Id.* The Court found, instead, that plaintiffs alleged that Amtrak should have fenced and policed the area to prevent crossings. *Id.* at *7. Under Pennsylvania law, the Court held Amtrak had no duty to fence or patrol the area. *Id.* at *7-8. The Court also held Amtrak had no duty to warn decedent of dangerous conditions of which she had reason to be aware. *Id.* at *8.

Plaintiffs filed a motion for reconsideration, claiming the District Court failed to consider their supplemental response before granting summary judgment. The District Court denied the motion, stating it had "specifically considered the supplemental arguments submitted by Plaintiffs before issuing the Order granting summary judgment to

5

Defendants." *Laurie v. Amtrak*, No. 01-6145 (E.D. Pa. filed May 1, 2003). Plaintiffs timely appealed.[1]

## II.

As stated, the parties disagree over whether the route traveled by the decedent was a "permissive crossing." In *Henry v. Pennsylvania Railroad Co.*, 84 A.2d 675 (Pa. 1951), the Pennsylvania Supreme Court defined "permissive crossing" as an expressed or implied license to pass over the property of another. *Id.* at 677. In order to qualify as a permissive crossing, "[i]t must be restricted to a well-defined location and must be shown to be used frequently, continuously, and notoriously by the public." *Id.*

Whether a permissive crossing exists is a factual issue. *See Gaul v. Consol. Rail Corp.*, 556 A.2d 892, 894 (Pa. Super. 1989). We agree with the District Court "that the evidence is not so completely one-sided as to permit resolution of that factual issue on a motion for summary judgment." *Laurie*, 2003 U.S. Dist. LEXIS 4910, at *6. But as the

---

[1]The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1349 because the action was filed against Amtrak, and the federal government owned more than half of Amtrak's Capital stock. *See Foster v. Nat'l Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 51 (3d Cir. 1993). We have jurisdiction under 28 U.S.C. § 1291.

Our review of an order granting summary judgment is plenary. *Estate of Zimmerman v. Southeastern Penn. Transp. Auth.*, 168 F.3d 680, 684 (3d Cir. 1999). We apply the same legal standard used by the District Court, which is a determination of whether the evidence is such that a reasonable jury could return a verdict for the non-moving party with all evidence being viewed in a light most favorable to the non-moving party. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994).

District Court correctly found, the resolution of this matter does not depend upon whether a permissive crossing existed at the accident location. *Id.*

For summary judgment purposes, we will assume the decedent was a licensee with implied permission to cross the tracks. Nonetheless, summary judgment was still proper. At a permissive crossing, a "railroad is subject to a duty of care comparable to that required of it at regular crossings." *Henry*, 84 A.2d at 677. But under Pennsylvania law, the evidence here cannot prove a breach of the duty of care.

Plaintiffs alleged Amtrak breached its duty of care owed to decedent as a licensee at a permissive crossing by not fencing or patrolling the area where decedent was killed. As the District Court noted: "[P]laintiffs argue simultaneously that the decedent had Amtrak's permission to cross its property . . . but that Amtrak was negligent in not preventing her and other members of the public from crossing the tracks." *Laurie*, 2003 U.S. Dist. LEXIS 4910, at *7.

Under Pennsylvania law, Amtrak has no duty to erect or maintain fences on its right-of-way. *Scarborough v. Lewis*, 565 A.2d 122, 126 (Pa. 1989) ("[I]t long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers."); *Dugan v. Penn. R.R. Co.*, 127 A.2d 343, 348 (Pa. 1956) (explaining that requiring railroad companies to erect fences would be too great of a burden). Nor does Pennsylvania law require a railroad to post guards or to police tracks to prevent trespassing. *Id.* at 349 ("We have been referred to no case where a court has gone so far as to require a railroad

7

company to patrol its tracks or police its trains with a sufficient number of guards to prevent children from attempting to board them."). Accordingly, the District Court did not err in holding that Amtrak had no duty to fence or police the accident area.[2]

Amtrak may have a duty to warn licensees about dangerous conditions of which they are unaware. *See Rossino v. Kovacs*, 718 A.2d 755, 757 (Pa. 1998) (citing Restatement (Second) of Torts § 342). But "[t]here is no duty to warn of that which is obvious." *Di Marco v. Penn. R.R. Co.*, 183 A. 780, 781 (Pa. 1936). Record evidence demonstrated that the sixteen-year-old decedent was aware that walking down an active railroad used by high-speed trains was potentially hazardous. Her father testified that he had told his children it was dangerous to cross the tracks and that his children "knew better than to play on the tracks." The decedent's brother confirmed that his parents had told them it was dangerous to cross the tracks.

### III.

Plaintiffs also contend Amtrak breached its duty by failing to operate the train in a safe fashion because the engineer allegedly violated Amtrak's operating rules by failing

---

[2]Plaintiffs also alleged that even if decedent were assumed to be a trespasser, Amtrak breached its duty of care by acting willfully and wantonly toward trespassers on its right of way. Plaintiffs detail Amtrak's knowledge of pedestrians using that area of the track as a shortcut. They contend Amtrak had notice of the obvious risk of injury to pedestrians who crossed the tracks but continued to operate high speed trains without mending the fence or policing the area. But as stated, Amtrak had no duty to take such measures.

to sound the train's horn before approaching a crossing. Defendants respond plaintiffs added this new theory of liability too late in the proceedings.[3]

Defendants contend plaintiffs' Third Supplemental Response to Amtrak's summary judgment motion was the first time plaintiffs alleged the Amtrak engineer was negligent in failing to sound the horn. Defendants note that at oral argument before the District Court, plaintiffs disavowed any claim of negligence by the engineer.[4]

---

[3]In granting the motion for summary judgment, the District Court stated: "Plaintiffs have not alleged, and do not now contend, that any action or inaction by those operating the train which struck the defendant was negligent." *Laurie*, 2003 U.S. Dist. LEXIS 4910, at *7. But in their Third Supplemental Response, plaintiffs did contend the engineer failed to sound the horn when the train approached a crossing. Regardless, in the District Court's denial of the motion for reconsideration, the District Court stated that it had "specifically considered the supplemental arguments submitted by Plaintiffs before issuing the Order granting summary judgment to Defendants." *Laurie v. Amtrak*, No. 01-6145 (E.D. Pa. filed May 1, 2003).

[4]The relevant portion of the oral argument transcript follows:
> THE COURT: And you don't have a claim here that the engineer was negligent, do you? You didn't allege that.
> [PLAINTIFFS' ATTY]: Well, the engineer has not been produced for deposition, despite - -
> THE COURT: I didn't ask that. I asked if you made any claim that he was negligent. I don't see anything in the complaint - -
> [PLAINTIFFS' ATTY]: No.
> THE COURT: - - that says that.
> [PLAINTIFFS' ATTY]: There's nothing in the complaint, your Honor.
> THE COURT: The only negligence you're alleging is the failure to fence the - - or failure to block off the crossing or - -
> [PLAINTIFFS' ATTY]: And a failure to patrol the area, to keep trespassers off the property.

App. 241-42. Defendants also note there is no mention of that liability theory in plaintiffs' interrogatory answers, the report of their railroad safety expert, or their first and second responses to Amtrak's summary judgment motion.

Plaintiffs respond that in their complaint in section 37, they pled:

> The injuries and resulting damages to the plaintiff's decedent Barbara Ann Laurie, were caused as a direct and proximate result of the negligence and liability-producing conduct of defendant, AMTRAK, its agents, ostensible agents, servants, and/or employees, which include the following
> . . .
> (d) Failure to enforce the existing laws regarding pedestrian cross over of the railroad tracks.
> . . .
> (f) Failure to adequately warn the general population of the dangers of pedestrian cross over of the rail road tracks.

App. at 25-26. They claim these allegations fairly placed at issue the negligence of Amtrak's engineer in failing to sound the horn.

Defendants respond that section 37 does not mention any negligence by the engineer, let alone negligence involving a failure to sound a horn. For those reasons, section 37 did not put them on notice that engineer negligence was at issue. We agree that section 37 fails to encompass negligence by the engineer in failing to sound the horn as the train approached a crossing. Accordingly, in plaintiffs' Third Supplemental Response alleging engineer negligence, they introduced a new theory of liability. In doing so, they were essentially trying to amend their complaint.

We review a district court's refusal to allow plaintiffs to amend their complaint for abuse of discretion. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). A district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. *Id.* at 272-73. Courts have been reluctant to allow plaintiffs to add new theories of

10

liability after summary judgment arguments have been completed. *See Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers" to a motion for summary judgment.); *OTA Ltd. P'ship v. Forcenergy, Inc.*, 237 F. Supp. 2d 558, 561 n.3 (E.D. Pa. 2002) (holding that a new claim that was first raised in opposition to a motion for summary judgment was "too late"); *Bulkoski v. Bacharach, Inc.*, 1 F. Supp. 2d 484, 487 (W.D. Pa. 1997) (holding that after a summary judgment argument, "[i]t is too late for plaintiff to change his theory of the case"), *aff'd*, 149 F.3d 1163 (3d Cir. 1998) (table decision).

Here, earlier in the proceedings, plaintiffs had access to the decedent's brother and to other engineers on the train who could inform plaintiffs when the operating engineer first sounded the horn. Accordingly, plaintiffs knew or should have known that the engineer failed to sound his horn as he approached a crossing. Yet plaintiffs waited until after the summary judgment hearing to allege engineer negligence. Moreover, an amendment here would result in additional discovery, cost, and preparation to defend against the new theory of engineer negligence. Amtrak defended the case in discovery and prepared for the scheduled trial on the reasonable assumption that engineer negligence was not at issue. Because of undue delay and prejudice, the District Court did

11

not abuse its discretion in refusing to allow plaintiffs to assert their engineer negligence theory of liability at such a late stage.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.